Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/14/2016 09:09 AM CDT

BRENTON R. STEWART AND MARY M. STEWART, APPELLANTS,
v. NEBRASKA DEPARTMENT OF REVENUE, AN AGENCY OF
THE STATE OF NEBRASKA, AND LEONARD J. SLOUP,
IN HIS OFFICIAL CAPACITY AS ACTING TAX
COMMISSIONER, APPELLEES.

___ N.W.2d ___

Filed October 14, 2016.    No. S-15-700.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.

2. ____: ____: ____. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Administrative Law: Statutes: Appeal and Error.** To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

4. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

5. **Statutes.** It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.

6. **Statutes: Legislature: Intent.** In order for a court to inquire into a statute's legislative history, the statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.

7. **Statutes.** If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning.
8. **Statutes: Legislature: Intent.** The intent of the Legislature may be found through its omission of words from a statute as well as its inclusion of words in a statute.
9. **Statutes: Legislature: Presumptions.** The Legislature is presumed to know the general condition surrounding the subject matter of the legislative enactment, and it is presumed to know and contemplate the legal effect that accompanies the language it employs to make effective the legislation.

Appeal from the District Court for Lancaster County: Jeffre Cheuvront, District Judge, Retired. Reversed and remanded with directions.

Tracy A. Oldemeyer and Andre R. Barry, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellants.

Douglas J. Peterson, Attorney General, and L. Jay Bartel for appellees.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Kelch, and Funke, JJ.

Cassel, J.
## INTRODUCTION
Two taxpayers sold their capital stock of a corporation and, in order to qualify for a special capital gains election,[1] structured the transaction to comply with the literal terms of a definitional statute.[2] The disallowance of the election was upheld below. In this appeal, we must decide whether either the "economic substance" doctrine or the "sham transaction" doctrine provided a basis to disallow the taxpayers' election. Because the statute is not open to interpretation and the plain language demonstrates that the Legislature intended to confer

---

[1] See Neb. Rev. Stat. § 77-2715.09(1) (Reissue 2009).

[2] Neb. Rev. Stat. § 77-2715.08(2)(c) (Reissue 2009).

this tax benefit, the answer is no. We reverse, and remand with directions the contrary decision below.

## BACKGROUND

In determining a resident taxpayer's liability for state income tax, the Nebraska Revenue Act of 1967[3] allows the taxpayer to make one election during his or her lifetime to exclude from federal adjusted gross income those capital gains from the sale of "capital stock of a corporation acquired by the individual (a) on account of employment by such corporation or (b) while employed by such corporation."[4] This exclusion is known as the special capital gains election.

Brenton R. Stewart and Mary M. Stewart, both residents of Nebraska, attempted to make this election regarding their sales of capital stock in Pioneer Aerial Applicators, Inc. (Pioneer), to Aurora Cooperative Elevator Company (Buyer).

### Sale of Pioneer Stock

On February 26, 2010, the Stewarts and the one other shareholder of Pioneer (collectively the Sellers) signed a contract to sell their combined shares of Pioneer to Buyer. The contract closing date was scheduled for March 1. Throughout this appeal, all of the parties before us have asserted that the closing date—March 1—is the relevant date. We limit our discussion accordingly.

The structure of the sale was critical to the tax exclusion. Without additional shareholders, the sale was not eligible for the special capital gains election because, otherwise, Pioneer was not a qualified corporation. A qualified corporation is one that

> at the time of the first sale or exchange for which the election is made, [has] (i) at least five shareholders and (ii) at least two shareholders or groups of shareholders

---

[3] See Neb. Rev. Stat. § 77-2701 et seq. (Reissue 2009, Cum. Supp. 2014 & Supp. 2015).

[4] § 77-2715.09(1).

who are not related to each other and each of which owns at least ten percent of the capital stock.[5]

Before the agreement was made, Pioneer had only three shareholders. Thus, it did not meet element (i) of the definition. Prior to the closing date, Mary was to sell one share of stock to each of three officers of Buyer. This was to be done so that Pioneer was a qualified corporation for the underlying stock purchase with Buyer.

The purchase agreement explicitly laid out the restructuring intended to make the Sellers' sale to Buyer eligible for the special capital gains election:

Ownership of Stock at Closing. It is the intention of the parties to structure the transaction in a manner that complies with the requirements of Neb. Rev. Stat. §§ 77-2715.08 and 77-2715.09 (R.R.S. 2009) in order to permit Sellers to subtract the capital gain from the sale of the Stock from their federal adjusted income pursuant to Neb. Rev. Stat. § 77-2715.9 [sic] (R.R.S. 2009) and exclude such gain from Nebraska income tax. Accordingly, at least three (3) days prior to the Closing, Mary [M.] Stewart agrees to transfer One (1) share of the Pioneer Stock to each of [three officers of Buyer] in exchange for non-recourse notes in an amount equal to .011% of the Stock Purchase Price, which notes shall be due and payable at the Closing; secured by a first lien in the Pioneer Stock so transferred; and be subject to the terms of this Agreement . . . .

On February 26, 2010, pursuant to the plan in the purchase agreement, Mary entered into separate agreements for the sales of stocks with the three officers, and Pioneer issued new stock certificates for the four of them to reflect the sale. At closing, on March 1, the Sellers and the officers executed stock powers with Buyer and Buyer issued and delivered checks to each in return.

---

[5] § 77-2715.08(2)(c).

### Stewarts' Special Capital Gains Election

For the 2010 tax year, the Stewarts filed their federal and state income tax returns as married filing jointly and, on their state return, made a special capital gains election on the sale of their shares of Pioneer stock to Buyer. The Stewarts chose not to make the election on Mary's February 26, 2010, sale of shares of Pioneer stock to the three officers of Buyer, and Mary paid capital gains tax for that sale.

The Nebraska Department of Revenue (Department) disallowed the Stewarts' special capital gains election for the sale of capital stock to Buyer, on the basis that the capital stock was not issued from a qualified corporation. With this disallowance, the Department issued the Stewarts a "Notice of Deficiency Determination" for a tax deficiency of $499,732.42, plus additional penalties and interest. The total amount assessed was $549,158.01. The Stewarts contested this finding and filed a petition for redetermination.

### Tax Commissioner's Decision

After an administrative hearing, the Tax Commissioner entered an order denying the Stewarts' petition for redetermination. The Tax Commissioner concluded that at the time of the sale for which the election was made, there were only three shareholders of Pioneer and that Pioneer was not a qualified corporation. In reaching this conclusion, the Tax Commissioner acknowledged that the purchase agreement between the Sellers and Buyer intended to add three more shareholders through an additional stock transaction prior to the closing date. However, the Tax Commissioner disregarded Mary's sale of stock to the three officers by applying the federal common-law "economic substance" and "sham transaction" tax nonavoidance doctrines.

On appeal, the district court for Lancaster County affirmed the order of the Tax Commissioner and his application of the federal tax doctrines in reaching his decision. Thereafter, the

Stewarts timely appealed, and we granted their petition to bypass review by the Nebraska Court of Appeals.

## ASSIGNMENT OF ERROR

The Stewarts assign, consolidated and restated, that the district court erred in applying the economic substance and sham transaction doctrines in determining whether they were entitled to the special capital gains election.

## STANDARD OF REVIEW

[1,2] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[6] When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[7]

[3] To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[8]

## ANALYSIS

[4-6] Resolution of the Stewarts' assignment of error requires statutory interpretation. Thus, we begin by recalling basic principles of statutory interpretation. Statutory language is to be given its plain and ordinary meaning, and an appellate

---

[6] *Valpak of Omaha v. Nebraska Dept. of Rev.*, 290 Neb. 497, 861 N.W.2d 105 (2015).

[7] *Id.*

[8] *Kerford Limestone Co. v. Nebraska Dept. of Rev.*, 287 Neb. 653, 844 N.W.2d 276 (2014).

court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[9] It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.[10] In order for a court to inquire into a statute's legislative history, the statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.[11]

### PLAIN MEANING REVIEW

One statute defines a qualified corporation for the purposes of a special capital gains election as one that

> *at the time of the first sale or exchange for which the election is made*, [has] (i) at least five shareholders and (ii) at least two shareholders or groups of shareholders who are not related to each other and each of which owns at least ten percent of the capital stock.[12]

We note that the statute does not include any language discussing the context or the purpose for creating the qualified corporation. Rather, the statute merely sets forth certain requirements for the shareholders at one *specific point in time* for the special capital gains election. Namely, the shareholder requirements must be met *at the time of the first sale or exchange for which the election is made*. Similarly, the statute authorizing the election[13] contains no language discussing underlying sales and transactions or requiring a purpose for taking actions to comply with the statute other than qualifying for the election.

---

[9] *Cargill Meat Solutions v. Colfax Cty. Bd. of Equal.*, 290 Neb. 726, 861 N.W.2d 718 (2015).

[10] *Id.*

[11] *Synergy4 Enters. v. Pinnacle Bank*, 290 Neb. 241, 859 N.W.2d 552 (2015).

[12] § 77-2715.08(2)(c) (emphasis supplied).

[13] § 77-2715.09.

For these reasons, we find no support in the plain language of either statute to review transactions that came before the "first sale or exchange for which the election is made" for a special capital gains election. The plain language of the statute defining a qualified corporation has clearly focused on the single point in time of the first sale for which the election is made. Here, the parties agree the relevant date is March 1, 2010. Accordingly, the transactions occurring on February 26 are outside the scope of the statute.

### Nonavoidance Doctrines

Nonetheless, the Department and the Tax Commissioner argue that the economic substance and sham transaction doctrines require us to find a legitimate business purpose and economic substance in the creation of the qualified corporation. This would require us to consider events leading up to and in anticipation of the first sale or exchange for which the election is made. In support of this argument, they allege that the doctrines "do not alter or modify plain statutory language, but, rather, are judicial doctrines applied to effectuate the purpose of a tax statute even if a transaction falls within the literal language of a statute."[14]

[7] We do not find this persuasive. The language of each statute is clear and unambiguous. If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning.[15] Therefore, we are precluded from looking beyond the words of the statute to apply additional elements for the special capital gains election or a qualified corporation.

Our previous decisions in *Kerford Limestone Co. v. Nebraska Dept. of Rev.*[16] and *Cargill Meat Solutions v. Colfax*

---

[14] Brief for appellees at 19.

[15] *Bridgeport Ethanol v. Nebraska Dept. of Rev.*, 284 Neb. 291, 818 N.W.2d 600 (2012).

[16] *Kerford Limestone Co. v. Nebraska Dept. of Rev., supra* note 8.

*Cty. Bd. of Equal.*[17] support this analysis. We briefly explain each one.

In *Kerford Limestone Co.*, the taxpayer purchased a motor grader for use in its limestone mining and manufacturing business and claimed the motor grader was exempt from sales and use tax under a Nebraska statute. The statute provided a personal property tax exemption for machinery or equipment "purchased, leased, or rented by a person engaged in the business of manufacturing for use in manufacturing."[18] Upon review of the exemption, the Department rejected the taxpayer's claim on the grounds that the motor grader was not exempt manufacturing machinery or equipment. A revenue ruling provided: "'If machinery and equipment has [sic] uses in addition to its manufacturing use, the manufacturing use must be greater than 50% of total use to qualify for the exemption.'"[19]

The Department did not base this rejection upon preexisting Department regulations. Rather, it engaged in an ad hoc interpretation of the statute, and, consequently, we granted no deference to the agency's proposed interpretation.

In our review of the statute, we determined that the Department's ruling was contrary to its plain language, because the statute did not establish a percentage of total use that the machinery or equipment had to be used for manufacturing in order for it to qualify for the exemption.[20] Instead, we found that the Department had added this requirement and that it lacked the authority to add to the language of the statute. Because this court likewise could not do so in the guise of statutory interpretation, we concluded that the taxpayer was entitled to the exemption.

---

[17] *Cargill Meat Solutions v. Colfax Cty. Bd. of Equal., supra* note 9.

[18] § 77-2701.47(1) (Supp. 2005).

[19] *Kerford Limestone Co. v. Nebraska Dept. of Rev., supra* note 8, 287 Neb. at 655, 844 N.W.2d at 279 (emphasis omitted). See Nebraska Department of Revenue Ruling 1-05-1 (Oct. 12, 2005).

[20] *Kerford Limestone Co. v. Nebraska Dept. of Rev., supra* note 8.

Similarly, in *Cargill Meat Solutions*, we refused to allow a county board of equalization to add words to a statute. A statute allowed a county board of equalization to "meet at any time for the purpose of assessing any omitted *real* property . . . and for correction of clerical errors . . . that result in a change of assessed value."[21] The county board invoked this statute to place mistakenly omitted *personal* property on the tax rolls. However, the statute did not specify "personal" property; it referred only to "real" property. Accordingly, we determined that the county board was essentially attempting to add the words "or personal" into the statute and that we could not read the statute in that manner.

Once again, we confront an attempt to read additional words into a clear and unambiguous statute. As in *Kerford Limestone Co.* and *Cargill Meat Solutions*, the statutes before us are not ambiguous. The Department and the Tax Commissioner would have us insert business purpose and economic substance requirements where the Legislature has not. We decline this invitation. To do so would be contrary to the plain meaning of the statute and our established precedents.

## Legislative Intent

For the sake of completeness, we note that the application of these federal tax doctrines in this case is also not supported by the legislative intent plainly evident in the words of the statute. The parties agree that these tax doctrines had been in place at the federal level for over 50 years by the time the special capital gains election statutes were enacted. Despite these long-established and well-known concepts, the Legislature did not include any language invoking either of them.

[8,9] The intent of the Legislature may be found through its omission of words from a statute as well as its inclusion of words in a statute.[22] Additionally, the Legislature is presumed

---

[21] Neb. Rev. Stat. § 77-1507(1) (Cum. Supp. 2014) (emphasis supplied).

[22] *Kerford Limestone Co. v. Nebraska Dept. of Rev., supra* note 8.

to know the general condition surrounding the subject matter of the legislative enactment, and it is presumed to know and contemplate the legal effect that accompanies the language it employs to make effective the legislation.[23] If the Legislature wanted to impose either of these additional requirements, it could have done so. And, indeed, in other instances, the Legislature has expressly invoked two similar concepts— "economic activity" and "business purpose."[24] Its omissions here are significant.

### Mid City Bank

Finally, the Department and the Tax Commissioner suggest our prior application of another federal tax doctrine in *Mid City Bank v. Douglas Cty. Bd. of Equal.*[25] should guide us to adopt the economic substance and sham transaction doctrines in this case. However, our decision in *Mid City Bank* was driven by the facts of that case. And, even if our holding in *Mid City Bank* could be applied to other cases, we do not find it controlling here.

*Mid City Bank* involved a conflict between two state statutes that both applied to personal property of a taxpayer. The personal property originally received a favorable tax treatment under one state statute[26] that allowed it to be assessed at a lower value with a concurrent transfer of stock. However, the taxpayer then made a federal tax election that treated the stock transferred as an asset sale instead of a sale of stock—valuing the personal property at a higher rate for federal tax purposes. This triggered the application of a second state statute[27] that

---

[23] *Id.*

[24] See, e.g., Neb. Rev. Stat. §§ 77-4931(6), 77-5540(6), and 77-5724(6) (Reissue 2009).

[25] *Mid City Bank v. Douglas Cty. Bd. of Equal.*, 260 Neb. 282, 616 N.W.2d 341 (2000).

[26] Neb. Rev. Stat. § 77-122 (Reissue 1996).

[27] Neb. Rev. Stat. § 77-118 (Reissue 1996).

allowed the county board of equalization to adjust property values for state tax purposes to reflect the federal valuation of the property.

This court ultimately was called upon to determine which of these two state statutes controlled in light of the federal tax election. Therefore, to give effect to both state statutes, we invoked a federal tax doctrine to aid in our construction. Here, we have no conflict between statutes or ambiguous language. And no federal statutes apply in our analysis. We see no reason to apply our reasoning in *Mid City Bank* to the case before us.

## CONCLUSION

Because the statutes at issue are clear and unambiguous, we limited our review to the plain language. Pioneer was a qualified corporation at the time of the first sale or exchange for which the Stewarts made their special capital gains election. Having met all the statutory requirements, the Stewarts were entitled to make the election. We therefore reverse the decision of the district court and remand the cause to the district court with directions to reverse the decision of the Tax Commissioner disallowing the special capital gains election.

REVERSED AND REMANDED WITH DIRECTIONS.

STACY, J., not participating.