Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/07/2017 09:08 AM CDT

Farmers Cooperative, a cooperative corporation organized under the laws of the State of Nebraska, appellant, v. State of Nebraska et al., appellees.

Frontier Cooperative Company, a cooperative corporation organized under the laws of the State of Nebraska, appellant, v. State of Nebraska et al., appellees.

___ N.W.2d ___

Filed April 7, 2017.    Nos. S-16-312, S-16-313.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.

2. ____: ____: ____. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Administrative Law: Statutes: Appeal and Error.** To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

4. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

5. **Statutes: Legislature: Intent.** In discerning the meaning of a statute, a court determines and gives effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

6. **Statutes.** A statute is ambiguous when the language used cannot be adequately understood from the plain meaning of the statute or when considered in pari materia with any related statutes.

7. **Statutes: Legislature.** When the Legislature provides a specific definition for purposes of a section of an act, that definition is controlling.

8. **Taxation: Agriculture: Words and Phrases.** The phrase "depreciable repairs or parts" in Neb. Rev. Stat. § 77-2708.01 (Cum. Supp. 2016) is ambiguous.

9. **Statutes: Legislature: Intent.** An appellate court can examine an act's legislative history if a statute is ambiguous or requires interpretation.

10. **Statutes: Intent.** In construing a statute, a court looks to the statutory objective to be accomplished, the evils and mischiefs sought to be remedied, and the purpose to be served.

11. **Statutes: Taxation.** Tax exemption provisions are strictly construed, and their operation will not be extended by construction.

12. **Statutes: Legislature: Intent.** The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent. An interpretation that is contrary to a clear legislative intent will be rejected.

13. **Taxation: Agriculture.** Under Neb. Rev. Stat. § 77-2708.01 (Cum. Supp. 2016), the refund for depreciable repairs or parts is to prevent double taxation and to ensure that all depreciable repairs and parts are subject to personal property tax.

14. **Taxation: Agriculture: Words and Phrases.** In Neb. Rev. Stat. § 77-2708.01 (Cum. Supp. 2016), the phrase "depreciable repairs or parts" means repairs or parts that appreciably prolong the life of the property, arrest its deterioration, or increase its value or usefulness, and are ordinarily capital expenditures for which a deduction is allowed only through the depreciation recovery allowance.

15. **Taxation: Proof.** The party claiming an exemption from taxation must establish entitlement to the exemption. A tax exemption is analogous to a tax refund.

Appeals from the District Court for Lancaster County: Andrew R. Jacobsen, Judge. Affirmed.

Thomas E. Jeffers and Andrew C. Pease, of Crosby, Guenzel, L.L.P., for appellants.

Douglas J. Peterson, Attorney General, and L. Jay Bartel for appellees.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Kelch, and Funke, JJ.

Funke, J.

## I. NATURE OF CASE

Farmers Cooperative (Farmers) and Frontier Cooperative Company (Frontier) (collectively the Cooperatives) appeal from orders by the district court for Lancaster County affirming the decisions of the Nebraska Department of Revenue (Department) and the acting Tax Commissioner of the State of Nebraska which denied, in part, their requested refunds of sales and use taxes paid on the purchase of repairs and parts for agricultural machinery and equipment, under Neb. Rev. Stat. § 77-2708.01 (Cum. Supp. 2016). The district court consolidated the cases for oral arguments. Likewise, this court has consolidated the appeals for oral arguments and decision.

The sole issue presented in each case is how the phrase "depreciable repairs or parts," within § 77-2708.0l, should be interpreted. The district court did not err in affirming the partial denial of the Cooperatives' requested refunds based upon its interpretation of § 77-2708.01. We affirm.

## II. BACKGROUND

### 1. Department's Interpretation
### of § 77-2708.01

In 1993, the Nebraska Legislature passed 1993 Neb. Laws, L.B. 345, which amended § 77-2708.01 to include the refund of sales and use taxes for depreciable repairs or parts. The relevant version of § 77-2708.01(1) states:

> Any purchaser of *depreciable repairs or parts* for agricultural machinery or equipment used in commercial agriculture may apply for a refund of all of the Nebraska sales or use taxes and all of the local option sales or use taxes paid prior to October 1, 2014, on the repairs or parts.

(Emphasis supplied.)

In the September 2014 "Nebraska Agricultural Machinery and Equipment Sales Tax Exemption Information Guide" (Information Guide), the Department interpreted the phrase "depreciable repairs or parts." The Information Guide defined

repairs and parts as depreciable, "if they will appreciably prolong the life of the property, arrest its deterioration, or increase its value or usefulness, and are ordinary capital expenditures for which a deduction is allowed only through the depreciation/cost recovery allowance." Conversely, according to the Tax Commissioner, the Information Guide explained that nondepreciable repair and replacement parts are those that "keep the property in an ordinary or usable condition, do not increase the value of the agricultural machinery and equipment repaired, or lengthen its life."

The Information Guide informed purchasers of depreciable repairs or parts that they may receive a refund of the sales and use taxes paid thereon by filing a "Nebraska Sales and Use Tax Refund Claim for Agricultural Machinery and Equipment Purchases or Leases, Form 7AG-1" (Form 7AG-1).

## 2. Factual History

The Cooperatives are buyers and sellers of agricultural products and inputs, including purchasing, selling, and storing grain. Both also provide on-farm services and products.

In September 2014, the Cooperatives submitted to the Department several Form 7AG-1's seeking refunds of sales and use taxes. Accompanying the forms were spreadsheets listing the transactions forming the basis of the claims and invoices related to those transactions. Neither of the Cooperatives submitted its personal property tax return or depreciation schedule to verify it had also paid personal property taxes on the agricultural machinery and equipment repairs or parts.

### (a) Farmers' Refund Claim

Farmers submitted a single Form 7AG-1 for a refund of the sales and use taxes paid on repairs or parts for $1,582.48.

In response, the Department sent an email to Farmers notifying it that some invoices were determined to be for repair, replacement, or maintenance parts. The Department stated that it could refund the taxes paid thereon only if Farmers had paid personal property taxes on the items and requested Farmers

submit a copy of its personal property tax return or depreciation schedule to verify that it had. In October 2014, the Department sent another email to Farmers, asking if Farmers had placed any of the claimed purchases on its personal property tax return. The record does not show that Farmers responded to either email.

In March 2015, the Department notified Farmers that it had completed processing the refund claim and that it had denied a portion of the requested refund, because the taxes were on purchases of nondepreciable repairs or parts. The items disallowed by the Department included, but were not limited to, alternators, bolts, gaskets, sensors, and an air conditioner for "Terragators/Floaters" owned and operated by Farmers. Counsel for Farmers responded in an email contesting the decision and arguing that the definition of depreciable repair and replacement parts used was incorrect.

Nevertheless, the Tax Commissioner issued a letter denying $365.30 of the $1,582.48 refund requested. The Tax Commissioner stated its reasoning for denying $365.30 was that sales and use taxes paid on nondepreciable repair and replacement parts are not refundable, referencing its Information Guide. Farmers did not request a formal hearing by the Department on the Tax Commissioner's decision. Instead, it appealed to the district court for Lancaster County.

(b) Frontier's Refund Claims

Frontier's claim concerns three Form 7AG-1's, one filed in Frontier's name and two filed in its predecessor's name, Husker Cooperative. The Form 7AG-1's requested refunds of $39,907.71, $21,473.43, and $9,834.09.

In March 2015, the Department emailed Frontier to inform Frontier that it had not yet completed its review of the refund claims and requested an extension to do so. Counsel for Frontier responded that it was willing to grant the extension unless it was "solely because [the Department] want[ed Frontier's] property tax information." Counsel for Frontier informed the Department that it would not provide the Department its

personal property tax return, because "nothing in the statutory exemption or relevant definitions requires proof that an item was separately scheduled on a property tax return as a condition to taking the exemption."

The Tax Commissioner timely issued a letter denying $20,437.44 of the $49,333.57 refund requested in Frontier's three claims. In April 2015, the Tax Commissioner sent a replacement letter correcting the total amount denied as $42,319.10 and the total refund requested as $71,215.23. The Tax Commissioner stated its reasoning for the partial denial was that sales and use taxes paid on nondepreciable repair and replacement parts are not refundable, referencing its Information Guide. The items disallowed by the Department included, but were not limited to, alternators, bolts, gaskets, sensors, and hoses for "Terragators/Floaters" owned and operated by Frontier. Frontier did not request a formal hearing by the Department on the Tax Commissioner's decision. Instead, it appealed to the district court for Lancaster County.

(c) District Court's Decisions

In each order, the district court identified the issue as the definition of the phrase "depreciable repairs or parts." It determined that the phrase was ambiguous, because it was defined neither in § 77-2708.01 nor elsewhere in Chapter 77 of the Nebraska Revised Statutes and ordinary definitions of "depreciable" did not clarify the meaning. Upon examining the legislative history, the court determined that the Department's interpretation of § 77-2708.01 in its Information Guide—which relied on the definition of "depreciable" in the Farmer's Tax Guide[1] published by the Internal Revenue Service (IRS)—was the correct interpretation.

The court stated that the Cooperatives both had the burden to prove their purchases qualified as depreciable repairs or parts. It determined that both Cooperatives had notice of

---

[1] U.S. Dept. of Treasury, Internal Revenue Service, Farmer's Tax Guide, Pub. No. 225 (2016).

what repairs and parts were depreciable from the Information Guide and failed to provide sufficient evidence to verify that the repairs and parts were depreciated. Therefore, the court affirmed the Tax Commissioner's partial denials. The Cooperatives each appealed.

## III. ASSIGNMENTS OF ERROR

The Cooperatives assign, restated, that the court erred in affirming the Tax Commissioner's partial denial of their claims and in finding that the Department's interpretation of the phrase "depreciable repairs or parts" under § 77-2708.01 is correct.

## IV. STANDARD OF REVIEW

[1,2] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[2] When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3]

[3] To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[4]

## V. ANALYSIS

### 1. Phrase "Depreciable Repairs or Parts" in § 77-2708.01 Is Ambiguous

All the parties argue that the phrase "depreciable repairs or parts" is unambiguous. However, the phrase "depreciable

---

[2] *Stewart v. Nebraska Dept. of Rev.*, 294 Neb. 1010, 885 N.W.2d 723 (2016).

[3] *Id.*

[4] *Id.*

repairs or parts" is defined in neither § 77-2708.01 nor any related statutes. Further, the parties provide different interpretations of the phrase.

[4-6] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[5] In discerning the meaning of a statute, a court determines and gives effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[6] However, a statute is ambiguous when the language used cannot be adequately understood from the plain meaning of the statute or when considered in pari materia with any related statutes.[7]

The Cooperatives argue that the proper interpretation of depreciable repairs and parts within § 77-2708.01 should be as set forth in Neb. Rev. Stat. § 77-119 (Reissue 2009). Section 77-119 defines "[d]epreciable tangible personal property" as "tangible personal property which is used in a trade or business or used for the production of income and which has a determinable life of longer than one year." The Cooperatives' contention that § 77-119's definition of the phrase "depreciable tangible personal property" should apply is based upon Neb. Rev. Stat. § 77-101 (Reissue 2009), which states that "[f]or purposes of Chapter 77 and any statutes dealing with taxation, unless the context otherwise requires, the definitions found in sections 77-102 to 77-132 shall be used."

An obvious problem arises with the Cooperatives' argument—despite that both § 77-119 and § 77-2708.01 contain the word "depreciable," the statutes use the term to describe

---

[5] *Id.*

[6] *Archer Daniels Midland Co. v. State*, 290 Neb. 780, 861 N.W.2d 733 (2015).

[7] *Project Extra Mile v. Nebraska Liquor Control Comm.*, 283 Neb. 379, 396, 810 N.W.2d 149, 164 (2012).

two different things. In § 77-119, "depreciable" is used to describe "tangible personal property," while in § 77-2708.01, "depreciable" is used to describe "repairs or parts." As a result, it is evident that the phrases "tangible personal property" and "repairs or parts" are different. Though parts may be tangible personal property, repairs, such as labor and services, are not. The presence of "repairs" in § 77-2708.01 makes the context different from mere tangible personal property.

The Cooperatives counter that pursuant to the Nebraska tax regulation 316 Neb. Admin. Code, ch. 1, § 094.03 (2005), sales of repair and replacement parts for agricultural machinery and equipment used in commercial agriculture are subject to sales tax, but charges for labor to repair agricultural machinery and equipment are not subject to sales tax, provided the charges are separately itemized on the billing invoice. However, this argument is unavailing, because § 77-2708.01 still applies to labor when it is not separately itemized. Therefore, § 77-119's definition of the phrase "depreciable tangible personal property" is not informative.

Also relied upon by the Cooperatives is Neb. Rev. Stat. § 77-2704.36 (Cum. Supp. 2016), which states that "[s]ales and use tax shall not be imposed on the gross receipts from the sale . . . of depreciable agricultural machinery and equipment purchased . . . for use in commercial agriculture." While the phrase "depreciable agricultural machinery and equipment" is defined in neither § 77-2704.36 nor related statutes, it has been defined by the Department in its own regulations. The tax regulation 316 Neb. Admin. Code, ch. 1, § 094.01C (2005), defines "depreciable agricultural machinery and equipment" as "agricultural machinery and equipment that has a determinable life of longer than one year." As a result, the Cooperatives contend that the phrase "depreciable repairs or parts" used in § 77-2708.01 should be interpreted consistently with the phrase "depreciable agricultural machinery and equipment" used in § 77-2704.36, and thus comprise all repairs and parts with a determinable life of longer than 1 year.

Again, we disagree with the argument that "depreciable" must be defined consistently throughout our statutes when it is used in differing contexts. Pursuant to the Nebraska tax regulation 316 Neb. Admin. Code, ch. 1, § 094.02 (2005), depreciable agricultural machinery and equipment are exempt from sales and use taxes. However, pursuant to § 094.03 and 316 Neb. Admin. Code, ch. 1, § 094.03A (2005), depreciable repairs and replacement parts are taxable, but are eligible for a refund. The Legislature's decision to treat "depreciable agricultural machinery and equipment" and "depreciable repairs or parts" differently for sales and use tax purposes, providing an exemption for the former and a refund for the latter, further shows there is a difference.

The Department argues that the definition of the phrase "depreciable repairs or parts" included in its Information Guide is supported by both the dictionary definitions of depreciable, depreciation, and depreciate and the IRS' definition of depreciable in its Farmer's Tax Guide.

[7] When the Legislature provides a specific definition for purposes of a section of an act, that definition is controlling.[8] However, in the case before us, we have found no clear definition of the phrase "depreciable repairs or parts" in our statutes, and therefore we look to whether the ordinary meaning of "depreciable" may provide the plain meaning of the phrase. One dictionary definition of "depreciable" is "capable of depreciating or being depreciated in value [or] capable of being depreciated for tax purposes."[9] Merriam-Webster's definition of "depreciate" is "to lower the price or estimated value of [or] to deduct from taxable income a portion of the original cost of (a business asset) over several years as

---

[8] *Trumble v. Sarpy County Board*, 283 Neb. 486, 810 N.W.2d 732 (2012).

[9] "Depreciable," Dictionary.com Unabridged, http://www.dictionary.com/browse/depreciable (last visited Mar. 31, 2017).

the value of the asset decreases."[10] Finally, the Black's Law Dictionary definition of "depreciation" is "[a] reduction in the value or price of something . . . a decline in an asset's value because of use, wear, obsolesence, or age."[11]

These definitions show that neither parties' interpretation of the phrase "depreciable repairs or parts" is supported by the ordinary meaning of depreciable or its variations. We agree with the Department's argument that many items with a determinable life of greater than 1 year, such as a bolt or gasket, cannot properly be placed on a depreciation schedule. However, the definitions also lend no support to the Department's interpretation that it is the repair or parts enhancement of another object that makes it depreciable. Further, many repairs or parts that do not enhance the value of another object are capable of being depreciated.

The Department also argues that the IRS' Farmer's Tax Guide supports its definition of depreciable repairs and parts. The Farmer's Tax Guide states that taxpayers can generally "deduct most expenses for the repair and maintenance of . . . farm property. . . . However, repairs to, or overhauls of, depreciable property that substantially prolong the life of the property, increase its value, or adapt it to a different use are capital expenses."[12] It defines a "capital expense" as "a payment, or a debt incurred, for the acquisition, improvement, or restoration of an asset that is expected to last more than one year."[13] As an example of a capital expense, it lists "[r]epairs

---

[10] "Depreciate," Merriam-Webster.com, https://www.merriam-webster.com/dictionary/depreciate (last visited Mar. 31, 2017). Accord "Depreciate," Dictionary.com Unabridged, http://www.dictionary.com/ browse/depreciate (last visited Mar. 31, 2017). See, also, "Depreciate," Oxford English Dictionary Online, http://www.oed.com/view/Entry/50419?redirectedFrom =depreciate.

[11] Black's Law Dictionary 535 (10th ed. 2014).

[12] Farmer's Tax Guide, *supra* note 1 at 20.

[13] *Id.* at 23.

to machinery [and] equipment . . . that prolong their useful life, increase their value, or adapt them to different use."[14]

[8] While the Farmer's Tax Guide shows that the IRS treats depreciable repairs or parts as capital expenses, which comports with the Department's definition, we cannot glean from § 77-2708.01 that this was the meaning intended by the Legislature, because it did not incorporate the phrase "capital expenses" into the statute. Therefore, we find the phrase "depreciable repairs or parts" ambiguous.

## 2. Legislative Intent

[9-12] An appellate court can examine an act's legislative history if a statute is ambiguous or requires interpretation.[15] In construing a statute, a court looks to the statutory objective to be accomplished, the evils and mischiefs sought to be remedied, and the purpose to be served.[16] Tax exemption provisions are strictly construed, and their operation will not be extended by construction.[17] Nevertheless, the fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.[18] An interpretation that is contrary to a clear legislative intent will be rejected.[19]

All the parties agree that the intent of § 77-2708.01 was to avoid double taxation. More specifically, the legislation sought to provide a sales tax refund to purchasers of certain repairs and parts for agricultural machinery and equipment which were subject to personal property tax.

The Department argues that the Legislature, by referencing the IRS standard, stated that it intended the phrase "depreciable

---

[14] *Id.* at 24.

[15] *Dean v. State*, 288 Neb. 530, 849 N.W.2d 138 (2014).

[16] *State v. Duncan*, 294 Neb. 162, 882 N.W.2d 650 (2016).

[17] *Bridgeport Ethanol v. Nebraska Dept. of Rev.*, 284 Neb. 291, 818 N.W.2d 600 (2012).

[18] *Dean, supra* note 15.

[19] *Id.*

repairs or parts" to be defined as it is in the Information Guide. Finally, the Department agrees applicants are not statutorily required to submit their personal property tax returns, but acknowledges that taxpayers have the burden to show that they are entitled to a refund.

The 1993 amendment to § 77-2708.01 which included the refund for depreciable repairs or parts was added to L.B. 345 as amendment 2590, referred to as the "Wickersham amendment." Senator W. Owen Elmer introduced the "Wickersham amendment," which contained the same language as an amendment Senator William Wickersham had added to another bill earlier that session. Senator Elmer explained the purpose of the Wickersham amendment as follows:

> Anytime that you purchase a piece of farm machinery, you . . . put it on the depreciation schedule . . . and now you don't have to pay the sales tax but you do have to pay the personal property tax on the piece of machinery. Now, you have a piece of equipment that needs repair. If it is major in nature, those repairs have to be put on the personal property tax depreciation schedule and you also have to pay sales tax on that. Double taxation like that is not very fair . . . .[20]

Senator Elmer then relinquished his opening time to Senator Wickersham to explain further. Senator Wickersham stated:

> [C]urrently repair parts on farm machinery and equipment can be subject to double taxation. They can have both a sales tax and personal property tax applied to them that is unlike the treatment of the primary piece of equipment that might be repaired if it's depreciable. And I want to emphasize, we are only talking about depreciable repair parts.[21]

Senator George Coordsen provided further explanation of what the Wickersham amendment would apply to:

---

[20] Floor Debate, L.B. 345, 93d Leg., 1st Sess. 7317-18 (June 3, 1993).

[21] *Id.* at 7318.

Bear in mind, this is not all major farm equipment. It relies totally upon the definition in [IRS] statutes as it applies to that individual piece of equipment within the individual farming operation. So not all what we might interpret as being major repairs do, in fact, enhance the value of that piece of equipment substantially. Therefore, they would never be required by the person preparing the . . . income tax form to be depreciated but rather would be taken as an ordinary expense in the year of purchase. Again, to reiterate what Senator Wickersham is trying to accomplish is a situation where the parts in a major repair are liable for the sales tax, where the parts and the labor involved are then required to be depreciated for a period of time that is reckoned to be the life of that repair . . . .[22]

Senator Coordsen also discussed the reason that the issue of double taxation on depreciable repairs or parts occurs. He said, "I was not aware that the federal government mandated the depreciation of repairs that appreciably enhanced the value of a piece of equipment . . . on the farmer's federal income tax [return,] which then force[s] it to show up on [the farmer's] report for personal property tax purpose[s]."[23]

In response to a question about whether a tractor blade would qualify as a depreciable part, Senator Ron Withem explained:

[T]he triggering mechanism is whether the repair part or the repair becomes part of a product that is, in fact, depreciated, and whether or not the tractor or the blade on the tractor would be depreciable property on which the owner of it would pay property tax on its depreciated value. That case then they'd get the rebate back. If it was not depreciated, then they wouldn't get the rebate back.[24]

---

[22] *Id.* at 7327-28.

[23] *Id.* at 7322-23.

[24] *Id*. at 7335.

Senator Coordsen then provided further insight on the question, stating:

> One, it has to be depreciable in a trade or business, and, two, and, number two, and more importantly, that repair and the labor associated with it, must appreciably, and I don't know what the measure is, it takes an [IRS] audit to determine that, appreciably enhance the value of that piece of equipment that it must be depreciated. For all practical purposes, 90 or more percent, and I suspect it is more than that, of all farm equipment repaired would remain subject to the sales tax under the Wickersham amendment. It is a very narrow double taxation when viewed from what I believe to be the intent of all of our personal property tax . . . .[25]

To solve the double taxation problem, the Legislature chose to employ a refund system, rather than the exemption system currently in effect for depreciable agricultural machinery and equipment, so that a paper trail would exist to prove the personal property taxes were actually being paid, before the sales and use tax was refunded. Senator Wickersham explained: "[T]he amendment that you have before you calls for a rebate only on depreciable repair parts because that makes that system accountable and, in fact, it is my belief that that is the only way to make that accountable, and certainly wish it to be accountable."[26] However, the Legislature recognized that its decision to use a refund system would result in some individuals continuing to be subjected to double taxation. This decision was evidenced by Senator Wickersham's statement that "[w]e'd have folks, I suppose, who might . . . might not be able to take advantage or would not take advantage of a rebate provision simply because of the passage of time and maybe the loss of records."[27]

---

[25] *Id.* at 7336.

[26] *Id.* at 7321.

[27] *Id.* at 7326.

The Cooperatives argue that their interpretation of § 77-2708.01 accomplishes the legislative intent of preventing double taxation by requiring sale taxes to be paid on repairs and parts with a determinable life of less than 1 year and requiring property taxes to be paid on repairs and parts with a determinable life greater than 1 year. The Cooperatives further argue that because the Department's regulations treat depreciable repairs or parts as depreciable tangible personal property to make it subject to personal property taxes, under its regulatory interpretation of Neb. Rev. Stat. § 77-202(3) (Cum. Supp. 2016), we must apply the definition of depreciable in § 77-119 to repairs or parts to prevent double taxation.

The Cooperatives are correct that § 77-202(3) requires the payment of property taxes on tangible personal property which is not depreciable tangible personal property as defined in § 77-119. Further, pursuant to 316 Neb. Admin. Code, ch. 1, § 094.05 (2005), personal property tax must be paid on depreciable repair parts, even if sales tax is paid on the item. Lastly, pursuant to § 094.03, repairs and replacement parts for agricultural machinery and equipment are subject to sales tax.

However, the Department's definition of depreciable repairs and parts does not create inconsistency between the meaning of "depreciable" for sales and use taxes and for personal property taxes, because 350 Neb. Admin. Code, ch. 20, § 001.02C (2009), makes only repairs or parts that qualify as capital expenses subject to personal property taxes. Further, as set forth in the tax regulation § 094.03A, "[t]he [sales] tax paid on purchases of depreciable repair and replacement parts is eligible for a refund, including the [sales] tax paid on the related repair or maintenance labor charges." Therefore, double taxation is avoided by providing documentation that repairs and parts are included on personal property tax returns or depreciation schedules.

The Cooperatives also argue that § 77-2708.01, which must be narrowly construed, does not require personal property tax returns be submitted to obtain the tax refund. However, as

mentioned later, the claimant maintains the burden to show that personal property tax has been paid on depreciable repairs and parts before the claimant is entitled to a sales tax refund.

[13] The legislative history set forth above shows that the intent of creating the refund for depreciable repairs or parts, in § 77-2708.01, was to prevent double taxation but also to ensure that all depreciable repairs and parts were subject to personal property tax. It also establishes that the Legislature intended the phrase "depreciable repairs or parts" to be defined under the guidance of the IRS.

[14] The Legislature's example that a refund pursuant to § 77-2708.01 would apply to a tractor blade attached to a tractor provides further confirmation that the Department's interpretation is correct by fully detailing the definitions of "depreciable" and "nondepreciable" repairs and parts included in the Information Guide. Therefore, we interpret the phrase "depreciable repairs or parts" as repairs or parts that appreciably prolong the life of the property, arrest its deterioration, or increase its value or usefulness, and are ordinarily capital expenditures for which a deduction is allowed only through the depreciation recovery allowance.

### 3. The Cooperatives Failed to Establish They Were Entitled to Refund of Taxes Denied by Tax Commissioner

[15] The party claiming an exemption from taxation must establish entitlement to the exemption.[28] A tax exemption is analogous to a tax refund.[29] The Department's Information Guide provided the correct definition of the phrase "depreciable repairs or parts," which informed the public of what items qualified for the tax refund. Accordingly, the Cooperatives had notice of items of which they were entitled to a refund.

---

[28] *Bridgeport Ethanol, supra* note 17.

[29] See *Goodyear Tire & Rubber Co. v. State*, 275 Neb. 594, 748 N.W.2d 42 (2008).

Neither party provided the Department with the information it needed to verify that the claimed repairs and parts were taxed as personal property. The Department provided Farmers with notice that it needed to submit its personal property tax return or depreciation schedule before it could receive a refund of certain taxes it requested, but Farmers never submitted such documents. Frontier preemptively notified the Department that it would not provide its personal property tax return or depreciation schedule unless it was being audited. Neither of the Cooperatives requested a formal hearing from the Department to review the Tax Commissioner's decision, so no additional evidence was developed on the record regarding the denied claims. Further, the Cooperatives did not submit any additional evidence to the district court on its appeal.

Accordingly, the court concluded that it could not determine whether the items submitted for a refund were taxed as personal property and qualified for a refund based on the invoices alone. The court's decisions conformed to the law, were supported by competent evidence, and were neither arbitrary, capricious, nor unreasonable. Accordingly, we find no errors on the record in either case.

## VI. CONCLUSION

For the reasons discussed above, we affirm both decisions of the district court.

AFFIRMED.

STACY, J., not participating.