Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/28/2020 09:06 AM CST

Sheryl A. Rogers, appellee, v. Jack's
Supper Club and Continental
Western Group, appellants.

___ N.W.2d ___

Filed December 6, 2019.    No. S-18-1018.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or
   award of the compensation court may be modified, reversed, or set aside
   only upon the grounds that (1) the compensation court acted without or
   in excess of its powers; (2) the judgment, order, or award was procured
   by fraud; (3) there is not sufficient competent evidence in the record to
   warrant the making of the judgment, order, or award; or (4) the findings
   of fact by the compensation court do not support the order or award.
2. ____: ____. An appellate court is obligated in workers' compensation
   cases to make its own determinations as to questions of law.
3. ____: ____. Findings of fact made by the Workers' Compensation Court
   after review have the same force and effect as a jury verdict and will not
   be set aside unless clearly erroneous.
4. **Workers' Compensation: Witnesses: Testimony.** As the trier of fact,
   the Workers' Compensation Court is the sole judge of the credibility of
   witnesses and the weight to be given their testimony.
5. **Statutes: Intent.** When interpreting a statute, the starting point and
   focus of the inquiry is the meaning of the statutory language, understood
   in context.
6. **Statutes: Appeal and Error.** Statutory language is to be given its plain
   and ordinary meaning, and an appellate court will not resort to inter-
   pretation to ascertain the meaning of statutory words which are plain,
   direct, and unambiguous.
7. **Statutes.** It is not within the province of the courts to read meaning
   into a statute that is not there or to read anything direct and plain out of
   a statute.
8. **Statutes: Legislature: Intent.** When words of a particular clause, taken
   literally, would plainly contradict other clauses of the same statute, or

lead to some manifest absurdity or to some consequences which a court sees plainly could not have been intended, or to result manifestly against the general term, scope, and purpose of the law, then the court may apply the rules of construction to ascertain the meaning and intent of the lawgiver, and bring the whole statute into harmony if possible.

9. **Statutes: Legislature: Public Policy.** It is the function of the Legislature, through the enactment of statutes, to declare what is the law and public policy of this state.

10. **Workers' Compensation: Liability.** Voluntary payments of workers' compensation benefits do not constitute an admission of liability by an employer.

Appeal from the Workers' Compensation Court: J. Michael Fitzgerald, Judge. Reversed and remanded with directions.

Caroline M. Westerhold and Eric J. Sutton, of Baylor Evnen, L.L.P., for appellants.

Margaret R. Jackson, Todd R. McWha, and Tyler Volkmer, of Waite, McWha & Heng, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Funke, Papik, and Freudenberg, JJ.

Papik, J.

The Workers' Compensation Court ordered Jack's Supper Club and Continental Western Group, its workers' compensation carrier (collectively JSC), to reimburse Sheryl A. Rogers for various medical expenses she incurred. In the same decision, the compensation court stated that Rogers could continue to receive treatment from certain providers. We agree with JSC, however, that it is not responsible to reimburse Rogers, because she selected the physicians who provided the treatment at issue in disregard of provisions of the Nebraska Workers' Compensation Act. We also agree with JSC that the compensation court failed to adequately explain the basis for its order that Rogers could continue to receive treatment from the specified providers. We thus reverse the order and remand the cause with directions.

## BACKGROUND

### *Injury, Selection of Physician in Form 50, and Settlement.*

Rogers injured her back while working for Jack's Supper Club in 2001. Shortly after the injury, she filled out a form indicating that she was choosing a "Dr. Beyers" at the Dundy County Hospital in Benkelman, Nebraska, to treat her for her work-related injury. The parties appear to agree that the form was a "Form 50" promulgated by the Workers' Compensation Court.

Rogers later filed a petition in the compensation court against JSC. After some litigation regarding Rogers' claim, the compensation court approved a lump-sum settlement in 2010. The settlement resolved JSC's liability for indemnity benefits. JSC remained responsible to pay Rogers for reasonable and necessary medical care for her work-related injury.

### *Dispute Regarding Reimbursement for Medical Expenses.*

At some point not clear from our record, Dr. Beyers, the physician that Rogers selected in the Form 50, died. Rogers then received treatment from Dr. Lori Stonehocker, one of Dr. Beyers' colleagues. JSC apparently reimbursed Rogers for treatment provided by Dr. Stonehocker.

In 2010, Rogers moved to Florida and the parties' counsel engaged in a series of communications regarding Rogers' treating physician. JSC initially expressed concern about Rogers' receiving treatment from a provider in Nebraska while living in Florida. It proposed that the parties agree to a pain management specialist in Florida. Rogers' counsel responded that she would not agree with JSC to a pain management specialist. Rogers' counsel later informed JSC's counsel that Rogers had selected Dr. Jonathan Daitch, a pain management specialist in Florida. After Rogers' counsel informed JSC's counsel that there was no Form 50 and that Rogers was free to select her own doctor, JSC's counsel responded that there was a Form 50

and that as a result, it was not clear what basis existed for Rogers to unilaterally choose her own doctor.

Rogers later filed a motion in which she alleged that JSC was refusing to reimburse her for treatment provided by Dr. Daitch. She asked that the compensation court order JSC to reimburse her for such treatment.

*Hearing on Motion to Compel Payment
for Medical Expenses.*

At the hearing on Rogers' motion, she testified that she had received treatment from both Dr. Daitch and Dr. Mark Means, a chiropractor in Florida. No evidence was presented that JSC agreed that Rogers could receive treatment from Dr. Daitch or Dr. Means. Rogers testified that while she discussed seeing Dr. Daitch with Dr. Stonehocker, Dr. Stonehocker did not refer her to Dr. Daitch. Rogers offered into evidence a number of medical bills for treatment provided by Drs. Daitch and Means. The majority of the treatment provided by Dr. Daitch was pharmacological, and Rogers offered Dr. Daitch's opinion that due to the work-related injury, Rogers would require a lifelong medication regimen of fentanyl, Norco, Lyrica, and Valium.

JSC offered the Form 50 and the communications between its counsel and Rogers' counsel regarding the selection of a pain management specialist in Florida. JSC also offered medical reports setting forth opinions regarding Rogers' injury and treatment. In one such report, Dr. John Massey stated that Rogers' complaints were "disproportionate with what would be expected from the back injury which was sustained and the surgical intervention that was undertaken." He expressed concern about possible adverse effects from Rogers' medication regimen and recommended weaning her from oral opiates. In a subsequent report, Dr. Massey expressed concern that Rogers was taking fentanyl, Norco, Lyrica, Valium, and Flexeril. He stated that patients often believe that such a combination of opioids, benzodiazepines, and muscle relaxants is more beneficial than it is. JSC also offered a report of Dr. Phillip Essay,

who reviewed Rogers' records and examined her. He stated that Rogers' complaints of pain were disproportionate with what would be expected and that there "is no evidence to support the long-term use of opioids for [Rogers'] condition related to the work injury." Dr. Essay also recommended weaning Rogers from the opioid portion of the medication regimen.

*Compensation Court Order*
*on Motion to Compel.*

Following the hearing, the compensation court issued a written order. It rejected JSC's argument that it was not responsible for the medical expenses because Rogers failed to comply with Neb. Rev. Stat. § 48-120(2) (Cum. Supp. 2018), a statute governing selection of treating physicians. It concluded that the provisions of § 48-120(2) should not apply under the circumstances because Rogers had moved to Florida and could not be expected to obtain a referral from her Nebraska doctor for a physician in Florida. It also stated that the alleged failure to obtain a referral from a physician is an affirmative defense which JSC failed to plead.

The compensation court went on to summarize the medical opinions of Drs. Daitch, Massey, and Essay. It concluded that the treatment provided by Dr. Daitch was reasonable and related to Rogers' injury at work. The compensation court ordered JSC to pay certain bills offered by Rogers. It also stated that Rogers was allowed to continue treatment with Dr. Daitch's office.

JSC filed a timely appeal of this decision.

## ASSIGNMENTS OF ERROR

JSC assigns, summarized, that the compensation court erred in three respects: (1) by rejecting JSC's argument that it was not responsible to reimburse Rogers for medical bills she incurred from providers in Florida, (2) by finding that the medical treatment provided to Rogers in Florida was reasonable and necessary, and (3) by failing to provide a basis for meaningful appellate review.

## STANDARD OF REVIEW

[1] A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the judgment, order, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Martinez v. CMR Constr. & Roofing of Texas*, 302 Neb. 618, 924 N.W.2d 326 (2019).

[2,3] An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Id.* Findings of fact made by the Workers' Compensation Court after review have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. *Id.*

[4] As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id.*

## ANALYSIS

*Compliance With § 48-120(2)
and Rule 50.*

We begin our analysis with JSC's argument that the compensation court erred by ordering it to pay for medical bills Rogers incurred from providers in Florida. JSC argues that Rogers incurred these charges in violation of § 48-120(2)(a) and Workers' Comp. Ct. R. of Proc. 50 (2018) and that therefore, it is not responsible to reimburse Rogers. Rogers' injury occurred in 2001. In the intervening years, the relevant statutory provisions and rules have remained the same or substantially similar. Therefore, we will refer to the current versions of the applicable statutes and rules. See *Allen v. Immanuel Med. Ctr.*, 278 Neb. 41, 767 N.W.2d 502 (2009).

Section 48-120 contains rules that govern from whom an injured employee may obtain medical treatment for a compensable injury. Those rules allow an employee, in some

circumstances, to select a physician to provide such treatment. There is no dispute that Rogers made such a selection by designating Dr. Beyers on the Form 50. Both parties refer to a physician selected by the employee under § 48-120(2)(a) as a "Form 50 Physician," a term we will use in our analysis as well.

JSC's argument relies on the following portions of § 48-120:

(2)(a) The employee has the right to select a physician who [meets particular criteria]. . . . If selection of the initial physician is made by the employee or employer pursuant to this subsection following notice by the employer pursuant to this subsection, the employee or employer shall not change the initial selection of physician made pursuant to this subsection unless such change is agreed to by the employee and employer or is ordered by the compensation court pursuant to subsection (6) of this section. . . .

. . . .

(e) The physician selected may arrange for any consultation, referral, or extraordinary or other specialized medical services as the nature of the injury requires.

(f) The employer is not responsible for medical services furnished or ordered by any physician or other person selected by the employee in disregard of this section. . . .

. . . .

(6) The compensation court shall have the authority to determine the necessity, character, and sufficiency of any medical services furnished or to be furnished and shall have authority to order a change of physician, hospital, rehabilitation facility, or other medical services when it deems such change is desirable or necessary.

JSC also invokes rule 50 of the Workers' Compensation Court rules of procedure. Portions of rule 50 address the same subject, providing as follows:

A. . . .

. . . .

4. The employee may not change the primary treating physician chosen . . . unless the employer agrees or the compensation court orders the change. . . .

. . . .

C. . . . [T]here can be no change in the primary treating physician unless the employee and the employer agree or the compensation court orders a change.

D. The primary treating physician may arrange for specialized medical services the employee needs. A referral by the primary treating physician is not a change.

(Emphasis omitted.)

Rule 50 appears to impose the same requirements as the provisions of § 48-120(2) quoted above. We thus limit our analysis to interpreting § 48-120(2). We will do so by applying our familiar rules of statutory interpretation, which we briefly recount below.

[5-7] When interpreting a statute, the starting point and focus of the inquiry is the meaning of the statutory language, understood in context. *State v. Garcia*, 301 Neb. 912, 920 N.W.2d 708 (2018). Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *State v. Wal*, 302 Neb. 308, 923 N.W.2d 367 (2019). It is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute. *Stewart v. Nebraska Dept. of Rev.*, 294 Neb. 1010, 885 N.W.2d 723 (2016).

The plain language of § 48-120(2) supports JSC's position that it is not responsible to pay for medical treatment unless it was provided by the Form 50 Physician or by a provider to whom the patient was referred by the Form 50 Physician. Section 48-120(2)(a) permits the employee to select a physician, and § 48-120(2)(e) allows the selected physician to make referrals to other providers. Section 48-120(2)(a) also allows the Form 50 Physician to be changed, but only if "agreed to

by the employee and employer" or if "ordered by the compensation court pursuant to [§ 48-120(6)]." And an employee may unilaterally select a new physician if the employer denies compensability for treatment provided by physicians within the rule 50(A)(4) chain of referrals. See *Clark v. Alegent Health Neb.*, 285 Neb. 60, 825 N.W.2d 195 (2013). Section 48-120(2)(f), however, provides that "[t]he employer is not responsible for medical services furnished or ordered by any physician or other person selected by the employee in disregard of this section."

Rogers does not even attempt to argue that the plain language of § 48-120(2)(a) entitles her to reimbursement for treatment from a provider that was not her Form 50 Physician or a person to whom she was referred by her Form 50 Physician. Instead, she argues that we should not follow the plain language in this case. Alternatively, she contends that JSC cannot rely on § 48-120(2) because of certain actions and omissions on its part. We discuss each of these arguments below.

[8] Rogers primarily argues that the plain language of § 48-120(2) should not be followed because it would lead to an absurd result in this case. She argues we may deviate from the plain language of the statute and specifically points us to language in *Anthony, Inc. v. City of Omaha*, 283 Neb. 868, 887-88, 813 N.W.2d 467, 482 (2012), where we said the following:

> When words of a particular clause, taken literally, would plainly contradict other clauses of the same statute, or lead to some manifest absurdity or to some consequences which we see plainly could not have been intended, or to result manifestly against the general term, scope, and purpose of the law, then we may apply the rules of construction to ascertain the meaning and intent of the lawgiver, and bring the whole statute into harmony if possible.

We disagree with Rogers that application of the plain language of § 48-120(2)(a) in these circumstances would lead to "manifest absurdity." Rogers argues that in circumstances in

which a Form 50 Physician dies or the employee moves out of state, the employee can no longer be treated by or receive referrals from the Form 50 Physician and thus should be able to unilaterally choose a new physician. The language of the statute, however, does not leave employees in such situations without remedies. A new Form 50 Physician can be selected either with agreement of the employer or by bringing the matter to the attention of the compensation court and asking it to approve a new Form 50 Physician. We cannot say that it would be manifestly absurd for the Legislature to require persons whose Form 50 Physician is no longer able to provide treatment or make referrals to obtain a new Form 50 Physician through the procedures explicitly set out in the statute.

[9] Rogers is essentially making a policy argument that persons in her position *should* not be limited to seeking agreement with the employer or asking the compensation court to appoint a new Form 50 Physician. But we are not tasked with selecting what we believe is the best policy. It is the function of the Legislature, through the enactment of statutes, to declare what is the law and public policy of this state. *Mays v. Midnite Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018).

Neither are we persuaded by Rogers' alternative arguments that even if JSC's statutory position is correct, it was nonetheless responsible to pay for the medical treatment she received outside the Form 50 process. Rogers contends that JSC was responsible to pay for treatment provided by doctors in Florida because after Dr. Beyers died, it reimbursed her for treatment she received from his colleague, Dr. Stonehocker. She also contends that JSC is responsible because it failed to plead her failure to obtain a written referral for treatment as an affirmative defense.

[10] Rogers appears to take the position that by making payments for treatment provided by Dr. Stonehocker, JSC effectively gave Rogers the right to unilaterally obtain treatment from anyone notwithstanding the limitations of § 48-120(2). Rogers has not identified any statutory language that would

support this argument. Moreover, it is inconsistent with both general principles of workers' compensation law and § 48-120(2)(a). Voluntary payments of workers' compensation benefits do not constitute an admission of liability by the employer. *McBee v. Goodyear Tire & Rubber Co.*, 255 Neb. 903, 587 N.W.2d 687 (1999). Furthermore, § 48-120(2)(a) contemplates that the employer may agree to a change in the Form 50 Physician. By providing reimbursement for treatment provided by Dr. Stonehocker, JSC was not admitting it was liable to make payments to *anyone* from whom Rogers obtained treatment.

Rogers fares no better with her argument that JSC cannot rely on a failure to obtain a referral because it did not plead it as an affirmative defense. The issue of whether JSC should reimburse Rogers for her past medical bills was decided in the context of a motion filed by Rogers. The Nebraska Workers' Compensation Act allows for disputes to be presented by motion. See Neb. Rev. Stat. § 48-162.03 (Cum. Supp. 2018). We are aware of no authority, however, that requires (or even allows) the nonmoving party in a workers' compensation proceeding to make a filing in response to a motion. Thus, even if the failure to obtain a referral is an affirmative defense, we see no basis to conclude that JSC waived it by failing to plead it.

Having determined that the plain text of § 48-120(2) governs and that JSC did not somehow waive the right to rely on that statute, it becomes clear that the compensation court should not have ordered JSC to reimburse Rogers for medical treatment obtained from providers in Florida. These providers were not Rogers' initial Form 50 Physician, they did not become the Form 50 Physician by way of either agreement or court order, and Rogers was not referred to them by her Form 50 Physician. The services they provided were thus "medical services furnished or ordered by [a] physician or other person selected by the employee in disregard of this section." § 48-120(2)(f). JSC is not responsible to pay for

such services, and the compensation court erred by holding to the contrary.

*Rule 11.*

We now turn to JSC's contention that the compensation court's decision did not comply with Workers' Comp. Ct. R. of Proc. 11 (2011). Among other things, rule 11 requires that a "decision[] of the court shall provide the basis for a meaningful appellate review." JSC argues that the portion of the compensation court's order stating that Rogers may continue to receive treatment from Dr. Daitch's office did not provide a basis for meaningful appellate review. We agree.

While the compensation court clearly explained the reasoning supporting its conclusion that JSC was responsible for medical bills Rogers already incurred, it went on to discuss whether JSC should be responsible for medical treatment provided by Dr. Daitch and his colleague, Dr. Michael Frey, going forward. It stated:

> It appears that the only argument in this case, as far as treatment, is whether or not it is appropriate to use narcotics or opioids for an extended period of time. When [Rogers] first began treatment with Dr. Daitch and Dr. Frey, the use of opioids for pain was well accepted. It is only recently that the use of opioids has been questioned because of potential issues or problems with addiction. This being the case, it is time for both Dr. Daitch and Dr. Frey to review the plan of treatment and review alternatives to opioids such has been proposed by Dr. Massey and Dr. Essay.
>
> If [JSC] desire[s] Dr. Daitch to review his plan and prepare a new plan, and explain why there cannot be a change in medications, it must do so at its own cost. The parties should agree on a method to ask Dr. Daitch to review his old plan and prepare a new plan, and explain why alternatives to the use of opioids are not utilized. This is something for the parties to work out as far as how

> it gets done, but it may be in the best interest of [Rogers] to have the plan, which has been in effect for a number of years, reviewed and a new plan prepared. A new plan may be the old plan, but some statements should be made on why [Rogers] is not weaned off of some of her narcotics. The parties should know this court has no jurisdiction over Dr. Daitch.

At the conclusion of its order, the compensation court stated that Rogers "is allowed to continue treatment with Dr. Frey and Dr. Daitch."

We cannot determine what the compensation court meant by ordering that Rogers is allowed to continue treatment with Dr. Daitch's office. It is not clear if the compensation court intended to make Dr. Daitch Rogers' Form 50 Physician going forward or if it made the necessary findings to do so. We have previously alluded to the compensation court's authority to order a change of the Form 50 Physician, but it can do so when it "deems such change is desirable or necessary." § 48-120(6). We read the compensation court's order, however, to equivocate about whether it is "desirable or necessary" for Rogers to continue to be treated by Dr. Daitch. While the order stated that Rogers could continue to receive treatment from Dr. Daitch, it expressed concern about the opioids he continues to prescribe for Rogers.

In addition, the compensation court appeared to believe that some type of review of the opioid regimen prescribed by Dr. Daitch was necessary. We do not understand from its order, however, whether the court was ordering such a review or what effect the results of that review might have on whether the compensation court believes it is necessary or desirable for Rogers to have Dr. Daitch as her Form 50 Physician.

We have previously reversed orders and remanded causes under rule 11 when it was not possible to determine whether the compensation court made the findings necessary to support the relief awarded. See, e.g., *Owen v. American Hydraulics*, 254 Neb. 685, 578 N.W.2d 57 (1998); *Hale v. Standard Meat*

*Co.*, 251 Neb. 37, 554 N.W.2d 424 (1996). We believe it is appropriate to do so for the same reason here. Upon remand, the compensation court shall enter an order regarding Rogers' right to reimbursement for ongoing medical treatment that complies with rule 11. Such order shall address whether it is changing Rogers' Form 50 Physician under § 48-120(6) and clarify the ambiguity about any review of Rogers' treatment regimen that is to take place.

## CONCLUSION

Because we find that the compensation court erred by ordering JSC to reimburse Rogers for treatment from providers selected in disregard of § 48-120(2) and by issuing a decision that did not comply with rule 11, we reverse the order and remand the cause with directions to enter an order in compliance with rule 11.

REVERSED AND REMANDED WITH DIRECTIONS.

STACY, J., not participating.