Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/24/2025 09:12 AM CST

State of Nebraska, appellee, v.
Chad R. Clausen, appellant.

___ N.W.3d ___

Filed January 24, 2025.    No. S-23-960.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law that an appellate court resolves independently of the trial court.
2. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
3. **Statutes: Intent.** A word or phrase repeated in a statute will bear the same meaning throughout the statute, unless a different intention appears.
4. **Statutes.** The absurd results doctrine allows a court to deviate from a statute's plain language if application of the language would lead to manifest absurdity.
5. **Statutes: Legislature: Intent.** A court may depart from statutory plain language based on the absurd results doctrine only if the result is so absurd that the Legislature could not possibly have intended it.
6. **Statutes.** It is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute.
7. **Courts: Legislature: Intent.** Courts are bound to respect not only the purposes a legislative body has selected, but also the means it has deemed appropriate, and prescribed, for the pursuit of those purposes.
8. **Convicted Sex Offender: Words and Phrases.** "Working days," as used in Neb. Rev. Stat. § 29-4001.01(6), refers to Mondays, Tuesdays,

Wednesdays, Thursdays, and Fridays, unless one of those days is a legal holiday.

Petition for further review from the Court of Appeals, Pirtle, Chief Judge, and Riedmann and Bishop, Judges, on appeal thereto from the District Court for Washington County, John E. Samson, Judge. Judgment of Court of Appeals reversed and vacated.

Adam J. Sipple, of Sipple Law, for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, and Papik, JJ.

Papik, J.

Nebraska's Sex Offender Registration Act (SORA) requires individuals subject to the act to register with authorities if they establish a "new address, temporary domicile, or habitual living location." Neb. Rev. Stat. § 29-4004 (Reissue 2016). The State charged Chad R. Clausen with violating this requirement after an investigation revealed he had been intermittently staying at his fiance's house without notifying authorities. After a bench trial, the district court found Clausen guilty of violating SORA. The district court determined that Clausen had established a habitual living location and temporary domicile at his fiance's house and had failed to register. Clausen appealed his conviction, arguing, among other things, that the State failed to prove he established a habitual living location or temporary domicile. The Nebraska Court of Appeals affirmed the conviction. See *State v. Clausen*, 33 Neb. App. 12, 9 N.W.3d 247 (2024). We granted Clausen's petition for further review. Because we find the State failed to introduce sufficient evidence that Clausen established a habitual living location or temporary domicile, we reverse his conviction and vacate his sentence.

## BACKGROUND

*Statutory Background.*

Because certain provisions of SORA are central to the issues presented in this case, we begin by reviewing them. Section 29-4004(3) provides that if an individual subject to SORA has "a new address, temporary domicile, or habitual living location in a different county in this state," the individual must inform the sheriff of the county in which he or she resides within 3 working days "before the address change." The same subsection also requires such an individual to register with the county sheriff of "his or her new county of residence . . . within three working days after the address change."

SORA provides definitions for both "habitual living location" and "temporary domicile." A "habitual living location" is defined as "any place that an offender may stay for a period of more than three days even though the sex offender maintains a separate permanent address or temporary domicile." Neb. Rev. Stat. § 29-4001.01(3) (Reissue 2016). A "temporary domicile" is defined as "any place at which the person actually lives or stays for a period of at least three working days." § 29-4001.01(6).

*District Court Proceedings.*

The State initiated criminal proceedings against Clausen, alleging that he failed to comply with the registration requirements of § 29-4004. After Clausen filed an unsuccessful motion to quash on the grounds that the terms "habitual living location" and "temporary domicile" were void for vagueness, the case was tried to the district court. At trial, the State introduced evidence that Clausen had a prior sexual assault conviction that made him subject to SORA. The State also introduced evidence that during the time relevant to the case, Clausen was registered under SORA at an address in Douglas County, Nebraska.

Most of the evidence introduced at trial focused on Clausen's presence at a residence owned by his fiance in Washington County, Nebraska. The State introduced evidence

that law enforcement in Washington County began investigating Clausen in October 2022 after receiving an anonymous tip that he was residing at a Washington County address. A law enforcement officer visited that address on October 18 and spoke with Virginia Guerrero, Clausen's fiance's mother.

Guerrero testified that at the time of the officer's visit, she and her daughter lived at the Washington County residence. When asked if Clausen was also living at the residence at the time of the officer's visit, Guerrero responded that he had been "staying there for the past 3-4 months." Guerrero later testified that Clausen had been living at the residence "[o]ff and on."

The State also called as a witness the law enforcement officer who spoke to Guerrero. He testified that Guerrero told him Clausen had been residing at the Washington County residence for approximately 6 months. The district court ruled that it was receiving that testimony only for purposes of impeaching Guerrero's testimony.

The officer also testified that later in the day on October 18, 2022, he spoke with Clausen by telephone. The officer testified that he asked Clausen if he was living at the Washington County residence and that Clausen responded that "he was living out there for three days, and then he resides back at his residence in [Douglas County] for three days." The officer testified that he then "confronted" Clausen with the information Guerrero provided and that Clausen then told him that "he was staying [at the Washington County residence] most nights," after which Clausen apologized and "asked . . . if he was going to go to jail."

The officer also testified that prior to October 18, 2022, Clausen never reported to the Washington County Sheriff's Department that he was living at the Washington County residence. On cross-examination, the officer admitted that his investigation did not address whether Clausen was staying at the Washington County residence "on weeknights versus weekends or holidays."

After trial, the district court entered a written order finding Clausen guilty of violating SORA's registration requirements. The district court found that the evidence showed that Clausen had established both a "temporary domicile" and a "habitual living location" in Washington County. The district court sentenced Clausen to 2 to 4 years' imprisonment with credit for time already served.

Clausen appealed to the Court of Appeals.

*Court of Appeals' Opinion.*

Clausen assigned on appeal that there was insufficient evidence introduced at trial that he established a "temporary domicile" or "habitual living location" under SORA. Clausen also assigned that the definitions of "habitual living location" and "temporary domicile" were unconstitutionally vague.

In support of his sufficiency of the evidence argument, Clausen relied on *Doe v. Nebraska*, 734 F. Supp. 2d 882 (D. Neb. 2010), a decision of the U.S. District Court for the District of Nebraska in which the registration requirements of SORA were challenged as unconstitutionally vague. The federal district court rejected that challenge. In doing so, it interpreted the phrase "period of at least three working days" in the definition of "temporary domicile" set forth in § 29-4001.01(6) to refer to 3 consecutive weekdays, excluding holidays. With respect to the definition of "habitual living location," the federal district court rejected the challengers' suggestion that the definition included any place a person covered by SORA might happen to stay for a period of more than 3 days. Instead, the court stated, "[I]t is evident the statute only requires a registrant to report his or her intended relocations." *Doe, supra*, 734 F. Supp. 2d at 924. Pointing to the interpretations adopted in *Doe, supra*, Clausen argued that the State had failed to introduce evidence that he established a temporary domicile (by actually staying at the Washington County residence for a period of 3 consecutive weekdays) or a habitual living location (by actually staying or intending to stay at the Washington County residence for more than 3 consecutive days).

The Court of Appeals rejected Clausen's sufficiency of the evidence challenge. Before addressing the evidence introduced at trial, the Court of Appeals noted that because the State did not dispute the interpretations of habitual living location and temporary domicile adopted in *Doe, supra*, the Court of Appeals would use those definitions.

As for the evidence, the Court of Appeals stated that "there is no evidence to indicate whether Clausen stayed at the Washington County residence on weekdays, weekends, or both." *State v. Clausen*, 33 Neb. App. 12, 17, 9 N.W.3d 247, 251 (2024). However, it held that, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found that Clausen stayed at the Washington County residence for 3 consecutive weekdays or for more than 3 consecutive days. In the Court of Appeals' view, Clausen's admission that he was staying at the Washington County residence "most nights" permitted such a conclusion.

The Court of Appeals then stated:

> Furthermore, it would be an absurd result to allow a registered sex offender to stay at a residence other than his registered one for 3 days out of every week, as long as one of those days was a weekend. See *State v. Hochstein and Anderson*, 262 Neb. 311, 632 N.W.2d 273 (2001) (stating penal statutes are given sensible construction in context of object sought to be accomplished, evils and mischiefs sought to be remedied, and purpose sought to be served). This would frustrate the purpose of SORA, which is to protect communities from sex offenders who present a high risk to reoffend by providing information about where previous offenders live, work, and attend school. See *State v. Wilson*, 306 Neb. 875, 947 N.W.2d 704 (2020).

*Id.* at 18, 9 N.W.3d at 252.

The Court of Appeals did not reach Clausen's constitutional challenge because he failed to file a timely notice under Neb. Ct. R. App. P. § 2-109(E) (rev. 2023).

We granted Clausen's petition for further review.

## ASSIGNMENTS OF ERROR

Clausen assigns on further review that the Court of Appeals erred (1) in its interpretation of the definition of temporary domicile and (2) by finding the evidence sufficient that Clausen established a temporary domicile or habitual living location at the Washington County residence.

Clausen also assigns that the Court of Appeals erred in relying on evidence that was admissible only for impeachment purposes, but his petition for further review included no argument on this point. Accordingly, we will not address this assignment. See *State v. Taylor*, 286 Neb. 966, 840 N.W.2d 526 (2013) (petition for further review and supporting memorandum brief must specifically set forth and discuss any error assigned to Court of Appeals).

## STANDARD OF REVIEW

[1] Statutory interpretation presents a question of law that an appellate court resolves independently of the trial court. *Bogue v. Gillis*, 311 Neb. 445, 973 N.W.2d 338 (2022).

[2] In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Haynie*, 317 Neb. 371, 9 N.W.3d 915 (2024). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

## ANALYSIS

Clausen challenges both the Court of Appeals' interpretation of the definition of temporary domicile and its conclusion that there was sufficient evidence that he established a habitual living location and temporary domicile. Because the sufficiency of the evidence analysis depends on the meaning of the statute, we take up his statutory interpretation argument first.

*Statutory Interpretation.*

Clausen argues that the Court of Appeals incorrectly interpreted the definition of "temporary domicile" set forth in § 29-4001.01(6). As mentioned above, that subsection defines "temporary domicile" to mean "any place at which the person actually lives or stays for a period of at least three working days." § 29-4001.01(6). Clausen understands the Court of Appeals to have interpreted this language to mean any place at which a person subject to SORA actually lives or stays for any 3-day period. In support of this reading of the Court of Appeals' opinion, Clausen points to the Court of Appeals' statement that "it would be an absurd result" and "frustrate the purpose of SORA" to "allow a registered sex offender to stay at a residence other than his registered one for 3 days out of every week, as long as one of those days was a weekend." *State v. Clausen*, 33 Neb. App. 12, 18, 9 N.W.3d 247, 252 (2024).

It is not completely clear to us how the Court of Appeals interpreted the language defining "temporary domicile." On one hand, the Court of Appeals stated early in its sufficiency of the evidence analysis that it would follow the definitions adopted in *Doe, supra*, and in that case, the federal district court clearly interpreted "working days" to refer to Mondays through Fridays with the exception of legal holidays. In addition, when explaining why it found there was sufficient evidence to find that Clausen established a temporary domicile, the Court of Appeals said that a reasonable trier of fact could find that Clausen stayed at the Washington County residence "3 consecutive weekdays." *State v. Clausen, supra*, 33 Neb. App. at 18, 9 N.W.2d at 252. On the other hand, however, the Court of Appeals appeared to later suggest that temporary domicile should be interpreted to include places a person covered by SORA stays for any 3-day period, because it would both be "an absurd result" and "frustrate the purpose of SORA" to excuse such a person from registering just because the 3-day period included a Saturday, Sunday, or legal holiday. *Id.*

To the extent the Court of Appeals interpreted temporary domicile to mean a place that a person covered by SORA stays for any 3-day period without regard to whether those days are Saturdays, Sundays, or legal holidays, we disagree. We explain why below.

As always, statutory interpretation begins with the text. See *Espinoza v. Job Source USA*, 313 Neb. 559, 984 N.W.2d 918 (2023). The text of SORA clearly requires persons covered by the statute to notify authorities if they establish a temporary domicile. And SORA specifically defines "temporary domicile." That definition, however, uses the phrase "working days," without further definition. When terms in a statute are not specifically defined, those terms are generally given their plain and ordinary meaning. See *Brown v. State*, 315 Neb. 336, 996 N.W.2d 56 (2023). See, also, *Schuyler Apt. Partners v. Colfax Cty. Bd. of Equal.*, 279 Neb. 989, 993, 783 N.W.2d 587, 591 (2010) ("[a]bsent a statutory indication to the contrary, words in a statute will be given their ordinary meaning").

In *Doe v. Nebraska*, 734 F. Supp. 2d 882 (D. Neb. 2010), the federal district court concluded that the term "working days," in the context of § 29-4001.01(6), would ordinarily be understood to refer to Mondays, Tuesdays, Wednesdays, Thursdays, and Fridays, unless the day in question is a legal holiday. Several other courts have similarly concluded that the term "working days" carries the same plain and ordinary meaning. See, e.g., *State v. Nerz*, 587 N.W.2d 23, 25 (Minn. 1998) (concluding plain meaning of "working days" does "not include Saturdays, Sundays and legal holidays"); *Abbott v. Ryan*, 964 So. 2d 1087 (La. App. 2007) (same); *Bennett v. Fier*, No. 97-CA-116, 1998 WL 350538 (Ohio App. July 2, 1998). We agree that in the context of § 29-4001.01(6), the plain and ordinary meaning of "working days" excludes Saturdays, Sundays, and legal holidays.

[3] This interpretation of "working days" is also supported by the usage of the phrase "working days" elsewhere in SORA. The phrase appears several times in § 29-4004

where it is used to set deadlines by which persons subject to the act must inform county sheriffs if they establish a new address, temporary domicile, or habitual living location, along with changes in employment or school attendance. See, e.g., § 29-4004(2) to (6). Presumably, SORA sets notification deadlines in terms of "working days" because in some cases it would be difficult or impossible for persons covered by SORA to provide the required notification on Saturdays, Sundays, or legal holidays. And if "working days" excludes Saturdays, Sundays, and legal holidays for purposes of registration deadlines under SORA, it can be assumed the phrase carries the same meaning when defining temporary domicile. A word or phrase repeated in a statute will bear the same meaning throughout the statute, unless a different intention appears. *Doty v. West Gate Bank*, 292 Neb. 787, 874 N.W.2d 839 (2016). See, also, Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012) (discussing "presumption of consistent usage").

The Court of Appeals did not point to any textual indicator suggesting that "working days" should be interpreted to mean something other than weekdays minus legal holidays. Instead, it invoked two other ideas: absurd results and statutory purpose. Although both ideas can play a role in statutory interpretation in some instances, they do not here.

[4,5] Take first the absurd results doctrine. We have recognized that doctrine allows a court to deviate from a statute's plain language if application of the language would lead to "manifest absurdity." *Parks v. Hy-Vee*, 307 Neb. 927, 945, 951 N.W.2d 504, 518 (2020). The bar of manifest absurdity, however, is not easily cleared. *Id.* We have said that a court may depart from statutory plain language based on the absurd results doctrine only if the result is "so absurd that the Legislature could not possibly have intended it." *Thomas v. Peterson*, 307 Neb. 89, 97, 948 N.W.2d 698, 705 (2020). See, also, Scalia & Garner, *supra* at 234-39.

The high hurdle of manifest absurdity is not cleared here. We do not deny that one could make a policy argument that someone previously convicted of sex offenses should be required to inform authorities if he or she stays somewhere for any 3-day period. But the question, for purposes of the absurd results doctrine, is whether the Legislature could have possibly intended to require registration only if a person covered by SORA stays somewhere for a period of 3 working days, as that term is ordinarily understood. Some line drawing by the Legislature as to the duration a person subject to SORA should be able to stay at a location before being required to register there is unavoidable. We are unable to say that the Legislature could not have possibly intended to draw the line at 3 working days. The absurd results doctrine has no application here.

[6] To the extent the Court of Appeals invoked statutory purpose to interpret "working days" to simply mean "days," that too was unwarranted in this case. Although courts can consider the purpose of a statute when deciding between multiple textually permissible readings of a statute, courts are merely to give effect to the text when the meaning of the text is plain, direct, and unambiguous. See *State ex rel. Peterson v. Shively*, 310 Neb. 1, 963 N.W.2d 508 (2021). See, also, *Barr v. S.E.C.*, 114 F.4th 441 (5th Cir. 2024) (explaining when statutory text is plain and unambiguous, statutory purpose is not to be considered); *U.S. v. Polk*, 61 F.4th 1277 (10th Cir. 2023) (same). As we often say, it is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute. *Rogers v. Jack's Supper Club*, 304 Neb. 605, 935 N.W.2d 754 (2019).

[7] One of SORA's purposes undoubtedly is, as the Court of Appeals observed, "to protect communities from sex offenders who present a high risk to reoffend by providing information about where previous offenders live, work, and attend school." *State v. Clausen*, 33 Neb. App. 12, 18, 9 N.W.3d 247, 252 (2024). But while statutes are passed to achieve policies

and purposes, they do so through legislatively selected means. See *In re Guardianship of Eliza W.*, 304 Neb. 995, 938 N.W.2d 307 (2020). See, also, *Rodriguez v. Lasting Hope Recovery Ctr.*, 308 Neb. 538, 955 N.W.2d 707 (2021) (Papik, J., concurring). And if courts can identify and enforce what they believe to be the general purpose or policy behind legislation rather than the details actually enacted in the text, they are selecting their own means rather than respecting those chosen by the legislative branch. See *id.* Courts are bound to respect not only the purposes a legislative body has selected, but also the means it has deemed appropriate, and prescribed, for the pursuit of those purposes. *In re Guardianship of Eliza W., supra*. It is thus a mistake to assume that anything that furthers a statute's primary purpose is the law and that anything that does not perfectly do so is not. *Id.* Applying these principles here, a court cannot invoke SORA's general purposes as a reason to depart from the plain meaning of "working days" discussed above.

[8] At oral argument, the State offered the theory that the Court of Appeals' observations regarding absurd results and statutory purpose were merely dicta. We acknowledge the possibility that the Court of Appeals was merely offering its impression that it seems counter to the purposes of SORA if someone covered by SORA could consistently stay at a location for 3-day periods without being obligated to register there. While such an observation may be of interest to the Legislature going forward, it does not license courts to ignore the current statute's use of the phrase "working days" in the definition of temporary domicile. We hold that "working days," as used in § 29-4001.01(6), refers to Mondays, Tuesdays, Wednesdays, Thursdays, and Fridays, unless one of those days is a legal holiday.

*Sufficiency of Evidence.*

This leaves Clausen's argument that there was insufficient evidence that he established a temporary domicile or habitual living location at the Washington County residence such that

he could be convicted of violating SORA by failing to register there. Because Clausen would have been required to notify authorities if he had established either a temporary domicile or a habitual living location in Washington County, we analyze whether there was sufficient evidence at trial that he established either, beginning with temporary domicile.

As we have discussed, temporary domicile is defined as "any place at which the person actually lives or stays for a period of at least three working days," § 29-4001.01(6), and, in this context, "working days" refers to Mondays, Tuesdays, Wednesdays, Thursdays, and Fridays that are not legal holidays. Additionally, in *Doe v. Nebraska*, 734 F. Supp. 2d 882 (D. Neb. 2010), the federal district court interpreted the language "a period of at least three working days" to require that a person live or stay somewhere for 3 *consecutive* days to establish a temporary domicile. On appeal, the State does not contest that interpretation. Clausen, for his part, does not suggest that a person must remain physically present at an address for 72 hours straight to establish a temporary domicile. Instead, Clausen focuses on the absence of evidence as to the days of the week he was present at the Washington County residence. He argues that without such evidence, a rational trier of fact could not have found that he established a temporary domicile there.

Clausen is correct that there was no direct evidence introduced at trial as to specific days he had stayed at the Washington County residence. In fact, the testifying officer admitted that he had not investigated whether Clausen was staying at the Washington County residence "on weeknights versus weekends or holidays." Even so, the Court of Appeals found that Clausen's admission that he was staying at the Washington County residence "most nights," combined with Guerrero's testimony that he had been staying there "[o]ff and on," would have allowed a rational trier of fact to find beyond a reasonable doubt that Clausen stayed there for 3 consecutive weekdays. Citing a dictionary definition that defined "most"

as "the majority of," the Court of Appeals concluded that if Clausen stayed at the Washington County residence a majority of the time, a reasonable trier of fact could have found that he stayed there 3 consecutive weekdays. *State v. Clausen*, 33 Neb. App. 12, 18, 9 N.W.3d 247, 252 (2024) (internal quotation marks omitted).

The Court of Appeals apparently concluded that Clausen's admission that he stayed at the Washington County residence more often than not was circumstantial evidence that permitted the district court to infer that he had stayed there 3 consecutive weekdays. There is no question that the State can prove a criminal offense by using circumstantial evidence; indeed, we have recognized that a conviction can be based solely on circumstantial evidence. See *State v. Warlick*, 308 Neb. 656, 956 N.W.2d 269 (2021). Further, it is generally recognized that triers of fact may rely on logic as well as their own experience and common sense to draw inferences based on circumstantial evidence. See, e.g., *U.S. v. Torres-Laranega*, 476 F.3d 1148 (10th Cir. 2007); *United States v. Ramos*, 788 Fed. Appx. 842 (3d Cir. 2019); *State v. Otero*, 49 Conn. App. 459, 715 A.2d 782 (1998). At the same time, however, our law recognizes that a criminal conviction cannot be based upon speculation. See *Warlick, supra*.

In this case, even when we view the evidence in the light most favorable to the prosecution, as our standard of review requires, we find that there was not evidence that would allow a rational trier of fact to find, without engaging in speculation, that Clausen stayed at the Washington County residence for 3 consecutive weekdays. Although, as the State emphasizes, there was evidence that Clausen had been staying at the Washington County residence "[o]ff and on" and "most nights," we do not understand how the district court could have, from that evidence, used other evidence, logic, experience, or common sense to determine beyond a reasonable doubt that Clausen stayed at the residence for 3 consecutive weekdays.

The evidence in this case did not allow for a proper inference based on circumstantial evidence. Compare this case to the oft-used hypothetical in which a person enters a building with a wet raincoat and a wet umbrella, and it is reasonably inferred that it was raining outside. See, e.g., *Ramos, supra*. In that example, it is reasonable to conclude that rain had fallen because experience and common sense tell us that people entering a building wearing wet raincoats and carrying wet umbrellas have usually been out in the rain. But we fail to see, and neither has the State explained, how logic, experience, or common sense would allow one to infer that a person who had stayed at a location more nights than not had ever spent 3 consecutive weekdays there. Rather, one would have to engage in speculation to conclude that because Clausen stayed at the Washington County residence most of the time, he must have stayed there 3 consecutive weekdays.

We acknowledge that there was also evidence that Clausen admitted that he was staying at the Washington County residence for 3 days and then staying at his address in Douglas County for 3 days. We also acknowledge that if Clausen followed that exact pattern for several weeks, he would inevitably stay at the Washington County residence for 3 consecutive weekdays. But even if Clausen admitted to following such an exact pattern, there was no evidence as to the length of time he had been following such a pattern. And without such evidence, the trier of fact again would have had to engage in speculation to conclude that Clausen had stayed at the Washington County residence for 3 consecutive weekdays. We find there was insufficient evidence that Clausen established a temporary domicile in Washington County.

The Court of Appeals also determined there was sufficient evidence that Clausen established a habitual living location at the Washington County residence. Before assessing the evidence on this question, we note that the definitions of habitual living location and temporary domicile differ in multiple respects. One key difference is that temporary domicile

is defined as a place at which the person covered by SORA "actually lives or stays," § 29-4001.01(6), for the enumerated period, while habitual living location is defined as a place that the person covered by SORA "may stay," § 29-4001.01(3), for the enumerated period. As discussed above, in *Doe v. Nebraska*, 734 F. Supp. 2d 882, 924 (D. Neb. 2010), the federal district court found that the definition of habitual living location was not unconstitutionally vague, because "'may stay'" did not refer to literally anywhere a person might happen to stay, but only to "intended relocations."

Even with the benefit of the federal district court's opinion in *Doe, supra*, it is not immediately obvious to us what triggers the establishment of a habitual living location under the statute. If, in fact, a person establishes a habitual living location at the moment he or she forms an intent to stay at another location for more than 3 days, that appears to raise some difficulties. So understood, it seems the statute could be read to require such a person to notify the sheriff of the county in which he or she resides 3 working days *before* that intent was formed. See, e.g., § 29-4004(3) (requiring persons covered by SORA to inform sheriff "if he or she has a new address, temporary domicile, or habitual living location . . . within three working days before the address change"). It is certainly possible for an individual to provide notice several days before he or she actually moves somewhere, but it is not so clear to us how a person would know to provide notice several days prior to forming an intent to relocate.

We need not, however, answer our questions as to how one establishes a habitual living location based on intent alone. The State attempted to show that Clausen established a habitual living location at the Washington County residence, not based solely on his intent to stay there, but based on its contention that he actually stayed there for more than 3 days. We presume for purposes of our analysis in this case that a person covered by SORA establishes a habitual living location if he or she actually stays at a place for more than 3 consecutive days.

Even so, we find that the trier of fact would have to engage in speculation to conclude that Clausen actually stayed at the Washington County residence for more than 3 consecutive days. Again, there was evidence that Clausen admitted to staying at the Washington County residence for 3-day periods and most nights. But, for reasons similar to those explained above, one would have to engage in speculation to conclude from those pieces of evidence that Clausen actually stayed at the Washington County residence for more than 3 consecutive days.

Like the Court of Appeals, we recognize that it is SORA's purpose "to protect communities from sex offenders who present a high risk to reoffend by providing information about where previous offenders live, work, and attend school." *State v. Clausen*, 33 Neb. App. 12, 18, 9 N.W.3d 247, 252 (2024). But the Legislature has chosen to pursue that purpose by requiring those subject to SORA to provide notification when they have established a habitual living location or temporary domicile. The Legislature chose to specifically define those concepts in terms of the number of days, and in the case of temporary domicile, the types of days the individual stays at a location. Although there was evidence that Clausen was regularly staying at the Washington County residence, the State failed to introduce evidence that would show he was staying at the Washington County residence for the requisite length or types of days that would trigger an obligation to notify authorities. In the absence of such evidence, the State failed to prove that Clausen violated SORA's requirements.

We emphasize that our decision in this case is not a return to "'accused's rule,'" a rule once applied by this court in reviewing the sufficiency of circumstantial evidence. See *State v. Olbricht*, 294 Neb. 974, 986, 885 N.W.2d 699, 708 (2016). That rule had the effect of requiring the State to "disprove every hypothesis of nonguilt in order to convict" using circumstantial evidence. *State v. Pierce*, 248 Neb. 536, 545, 537 N.W.2d 323, 329 (1995). We rejected that rule and have

declined several invitations to return to it. See, e.g., *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020); *Olbricht, supra*. We find the evidence insufficient in this case not under the "accused's rule," but under our current standard for reviewing challenges to the sufficiency of the evidence recited above.

Because the State failed to introduce sufficient evidence that Clausen established a temporary domicile or habitual living location in Washington County, it failed to prove that he violated SORA. Accordingly, we reverse his conviction and vacate his sentence.

## CONCLUSION

To the extent the Court of Appeals held that a person subject to SORA can establish a temporary domicile for purposes of § 29-4001.01(6) by staying at a location for any 3-day period, we disagree. We interpret "working days" in § 29-4001.01(6) to refer to Mondays, Tuesdays, Wednesdays, Thursdays, and Fridays with the exception of legal holidays. Further, because the State failed to introduce sufficient evidence that Clausen established either a temporary domicile or a habitual living location in Washington County, we find that the State failed to prove that Clausen was required to register there. Accordingly, we reverse his conviction for violating SORA and vacate his sentence.

Reversed and vacated.

Freudenberg, J., not participating.