IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. LEOS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

EMILIO A. LEOS, APPELLANT.

Filed March 10, 2026.    No. A-25-875.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Sanford J. Pollack, of Pollack & Ball, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

PIRTLE, WELCH, and FREEMAN, Judges.

FREEMAN, Judge.

### INTRODUCTION

Emilio A. Leos appeals from an order of the Lancaster County District Court denying his request to transfer his criminal proceedings to the juvenile court. Finding no abuse of discretion by the district court, we affirm.

### BACKGROUND

In August 2025, Leos, born May 2010, was charged by information in district court with robbery, a Class II felony; assault in the first degree, a Class II felony; use of a firearm to commit a felony, a Class IC felony; and possession of a stolen firearm, a Class IIA felony. The charges arose after Leos, armed with a firearm, attempted to rob another juvenile, Hayden Huckabee, of his firearm. Leos borrowed a stolen firearm and covered his face to conceal his identity. Leos approached Huckabee on the street and told him to give him everything. Huckabee shot at Leos,

- 1 -

and Leos returned fire. Both juveniles survived their injuries. Leos was 15 years old at the time of the offenses and is 15 years old at the time of this appeal.

Beginning July 2025, Leos was placed on bond under the Pre-Adjudication Community Services (PACS) program while in district court. While under bond, he was electronically monitored, was subjected to weekly drug tests, took educational classes, and worked part-time. His grades improved while on bond. Leos complied with his bond conditions and was very cooperative.

His family was also cooperative and interested in what they could do to help Leos during the pendency of the case. They helped to schedule an evaluation for Leos through Blue Valley Behavioral Health. The evaluation was completed in October 2025, and it recommended outpatient programming and grief therapy. His parents also scheduled individual therapy for Leos and assisted in helping Leos find his part-time job.

Leos has no prior criminal or juvenile court history. However, he was previously withdrawn from school due to his participation in fights. Leos has attention-deficit/hyperactivity disorder and post-traumatic stress disorder due to the death of his biological mother. Leos has normal cognitive functioning for a 15-year-old. There is no indication that he is involved in a gang. There is no order that Leos is not amenable to rehabilitative services pursuant to Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016).

The juvenile probation officer supervisor, Brianna Johnson, testified that the probation office conducted a risk assessment for Leos, which recommended that he be placed in secure detention. She stated that violent felonies, similar to Leos' charges, usually receive a secure detention recommendation. She later explained that, in juvenile court, a juvenile can remain on juvenile probation until age 19; and a juvenile usually stays on probation for about 1 year.

On August 27, 2025, Leos filed a motion to transfer his case to the juvenile court. The hearing was held on October 28.

At the hearing, the district court heard testimony regarding the services available to Leos if he remained in the district court. If Leos was to remain in the district court and be sentenced to prison, he would go to the Nebraska Correctional Youth Facility (Youth Facility). The Youth Facility takes male juveniles until age 21, though sometimes the youth are transferred out at age 19. The Youth Facility has the same services as those offered through juvenile court. If Leos were to be transferred out of the Youth Facility, similar rehabilitative services would still be available in the adult prison system.

A psychologist, Dr. Stephanie Bruhn, was hired by Leos to conduct a risk assessment. Bruhn assessed Leos as a low risk to the public. However, she recommended he receive some supervision through either a case manager or probation.

Though Bruhn did not want to diminish the violence of the incident, she described the incident as a one-time occurrence due to poor decision-making and behavior controls. Leos also admitted to Bruhn that he had made poor decisions. Bruhn did not believe there to be a pattern of violent behavior.

Bruhn identified several underlying issues for Leos to address in treatment. Leos has internal struggles between pleasing others and becoming his own independent person. In treatment, he should address decision-making, impulse control, and pro-social skills. Bruhn also

recommended family therapy to improve communication and grief therapy to move past the issues surrounding the death of his biological mother.

Bruhn generally testified that rehabilitative services for juveniles are more beneficial than incarceration, as juveniles who are incarcerated are more likely to display antisocial and negative behaviors than those in rehabilitation. Additionally, male brains are not fully formed until about age 25.

On November 12, 2025, the district court denied Leos's motion to transfer to juvenile court. The district court stated:

> This difficult analysis requires the Court to balance legitimate concerns about a young person's future against serious concerns about public safety and the need for accountability for violent crime. [Leos] is 15 years old with no prior record. Under other circumstances, transfer to juvenile court might be appropriate. However, this case involves extraordinarily serious offenses. [Leos] used a stolen firearm to commit an armed robbery that resulted in a shootout causing serious bodily injury to the victim and potentially permanent disabilities. This conduct endangered not only the participants but any members of the public in the area. [Leos'] motivation was to illegally obtain another firearm by using a firearm to commit a violent felony. The juvenile court would have less than four years remaining in its jurisdiction - a period that would be insufficient to ensure the extensive treatment and rehabilitation [Leos] needs while guaranteeing adequate supervision and accountability into adulthood. Retention in district court provides greater opportunity for extended supervision if necessary while still allowing access to rehabilitative services.
>
> The Court is required to balance [Leos'] potential for rehabilitation against the practical need for adequate time to achieve that rehabilitation and the paramount concern for public safety. After carefully weighing all factors, the Court concludes that a sound basis exists for retaining this case in district court.

Leos appeals.

## ASSIGNMENT OF ERROR

Leos argues that the district court erred in denying his motion to transfer to juvenile court.

## STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d 915 (2023). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

Leos argues that the district court abused its discretion by finding that the State met its burden of establishing a sound basis for retention in district court.

When Leos moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to Neb. Rev. Stat. § 29-1816(3)(a) (Cum. Supp. 2024), which subsection requires consideration of the following factors set forth in Neb. Rev. Stat. § 43-276(1) (Cum. Supp. 2024):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." § 29-1816(3)(a).

In a motion to transfer to juvenile court, the burden of proving a sound basis for retaining jurisdiction in county court or district court lies with the State. *State v. Jeremiah T.*, 319 Neb. 133, 21 N.W.3d 313 (2025). When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court. *Id.* To retain proceedings in criminal court, the court need not resolve every statutory factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. *Id.* It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. *Id.*

Here, the district court analyzed every factor contained in § 43-276. We will review the factors below.

First, Leos agrees with the district court's determination on several factors. Leos agrees with the district court that his age, lack of criminal and juvenile history, and willingness to participate in mediation are all factors that favor transfer to juvenile court. However, the district court found that Leos' age only slightly favored transfer because of the severity of the offense and the limited time Leos would have in juvenile court.

Other factors which favored transfer included that there was no known court order pursuant to § 43-2,106.03 and there was no indication of gang involvement. Leos further agrees that there was no evidence presented regarding the juvenile pretrial diversion program. Because there was

no evidence regarding the juvenile pretrial diversion program, Leos agrees with the district court that this factor is neutral. Factors that are considered neutral or not applicable are equivalent to factors that favor transfer because § 43-276 starts with the presumption that the case should be transferred to juvenile court. See *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d 915 (2023).

Leos also agrees that he possessed a firearm and that this factor weighs in favor of retention in district court.

Before we review the contested factors, we note that the district court often relied on the reasoning that Leos may need additional time for treatment beyond the time constraints of the juvenile court. Neither party presented evidence regarding the duration required for Leos to complete treatment, whether it could be completed within the juvenile court or would require time into adulthood. The only evidence provided suggested that probation in juvenile court usually lasts for 1 year, although a juvenile can remain on probation until age 19.

The district court made the determination that additional time may be needed, due to the violence of the crime and the complexity of the underlying concerns to be addressed in Leos' treatment. The district court, as the trier of fact, may rely on logic as well as its own experience and common sense to draw the inference that Leos would need additional time for treatment past adulthood. See *State v. Clausen*, 318 Neb. 375, 15 N.W.3d 858 (2025). The violence of a crime has also been found sufficient to support the determination that additional time for rehabilitative treatment and supervision is needed beyond minority. See, *State v. Jeremiah T.*, 319 Neb. 133, 21 N.W.3d 313 (2025) (finding violence of alleged crime supported determination that juvenile would need supervision into adulthood even when expert opined there was sufficient time for rehabilitation in juvenile court); *State v. Lu*, 33 Neb. App. 45, 10 N.W.3d 382 (2024) (finding violence of alleged crime supported determination that juvenile would need supervision into adulthood). Therefore, the district court's determination is not clearly untenable.

Leos contests the following factors that the district court found in favor of retention in district court.

First, the district court found that the rehabilitative services available to Leos were found in both juvenile and district court. However, the district court found that retention would allow more time for treatment considering the severity of the offenses. The district court found that this factor weighed slightly in favor of retention.

The district court found the offense involved extreme violence in a public space. Leos attempted to rob another juvenile of his firearm at gunpoint. Each juvenile shot at each other, and both received injuries. The district court found that this factor weighed heavily in favor of retention.

The district court found that Leos' motivation for the crime was to obtain Huckabee's firearm. While Bruhn testified that Leos has problems controlling his behavior, this offense demonstrated planning. Leos planned the robbery by borrowing a stolen firearm and covering his face. The district court found that this factor weighed in favor of retention.

The district court found that it would be in Leos' best interests to remain in district court. Leos cites to our previous opinions in arguing that every juvenile's best interests would be better served by attempting rehabilitation in the juvenile court system rather than being sentenced to a term of imprisonment in the adult corrections system. See *In re Interest of William E.*, 29 Neb. App. 44, 950 N.W.2d 392 (2020). While Bruhn testified that rehabilitative services are more

beneficial to juveniles than incarceration, the rehabilitative services are also available through district court. Bruhn testified that there were several underlying issues for Leos to address in treatment. The district court recognized there may not be sufficient time in juvenile court to address all the concerns recommended. The district court concluded that it would be more beneficial for Leos to remain in district court where he would have sufficient time to complete treatment.

The district court considered that Leos had followed the conditions of his bond and that Bruhn testified that Leos is at a low risk to public safety. Bruhn further testified that she believed that these offenses, though violent, represented an isolated event, and she did not believe Leos had a pattern for violent behaviors. However, the district court also found that the offenses involved violence with a firearm in a public space. And given that the juvenile court might not be able to provide the supervision needed to protect the public long-term, the district court weighed the factor of public safety heavily in favor of retention.

Though the district court acknowledged that a male's brain is not fully developed until age 25, Leos' actions demonstrated that he planned a robbery at gunpoint. Therefore, the district court found that Leos' ability to appreciate the nature and seriousness of his conduct weighed somewhat in favor of retention.

The district court found that the best interests of Leos and the public safety required Leos to be supervised beyond minority. The district court found, that because of the violence of the crime, Leos would most likely require treatment into adulthood. Therefore, Leos' best interests would be served by allowing more time for treatment beyond the time constraints of the juvenile court. This would also benefit the public's safety due to the violence of the crimes. The district court found this factor to weigh in favor of retention.

Lastly, Leos argues that his culpability is lessened because of his age and the trauma he suffered from the passing of his biological mother. However, the district court stated:

> The question here is not whether [Leos] is less culpable than an adult who committed the same offense. The question is whether, given all the circumstances, there is a sound basis for retaining this case in district court rather than transferring it to juvenile court. For the reasons explained above, the Court concludes that such a sound basis exists.

Leos essentially requests that we reweigh the evidence. However, that is not our standard of review. See *State v. Jeremiah T.*, 319 Neb. 133, 21 N.W.3d 313 (2025). The district court addressed every factor of § 43-276. See *State v. Lu*, 33 Neb. App. 45, 59, 10 N.W.3d 382, 394 (2024) ("While it is the better practice for the trial court to refer to all the statutory factors in its order, the court is not required to do so."). When balancing the factors, it was not clearly untenable for the district court to find a sound basis to retain jurisdiction in district court.

CONCLUSION

We conclude that the district court did not abuse its discretion in finding a sound basis for retaining jurisdiction.

AFFIRMED.